The CITY OF HUGHES SPRINGS,
Texas, and Deborah Abernathy,
Appellants,

v.

The HUGHES SPRINGS VOLUNTEER
AMBULANCE SERVICE, INC.,
Appellee.

No. 06–06–00042–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 28, 2007.

Decided April 27, 2007.

Rehearing Overruled June 12, 2007.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellants.

Kristi I. McCasland, Greer, McCasland & Miller, LLP, Texarkana, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

 The Hughes Springs Volunteer Ambulance Service, a nonprofit corporation originally established "to operate an ambulance service," no longer fulfills that original purpose. A claim seeking to have a receiver appointed for the Service, or alternatively to dissolve the Service, was brought by two parties: the City of Hughes Springs, which claims to be a creditor of the Service and an "irrevocable beneficiary" of the Service's assets on dissolution, and Deborah Abernathy, a member of the Service. After a bench trial, the petition to dissolve was denied by the trial

court in a very thorough, forty-two-page order accompanied by 228 findings of fact [1] and conclusions of law. The City and Abernathy appeal.

We affirm the trial court's judgment because (1) the City did not establish that unsecured creditors, as a class, would be irreparably harmed by the Service's continued existence, (2) Abernathy cannot invoke the failure of the Service's original purpose, and (3) the *cy pres* doctrine does not apply. We address those issues in that order, after providing legal and factual background applicable to all the issues.

*Legal Background*

The Service was incorporated under, and is currently governed by, the Texas

---

1. The trial court's findings of fact are reviewed for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). Since receivership is an equitable remedy within the sound discretion of the trial court, we review the trial court's decision not to appoint a receiver for an abuse of discretion. *Greater Fort Worth v. Mims,* 574 S.W.2d 870, 872 (Tex.Civ.App.-Fort Worth 1978, writ dism'd).

Evidence is legally insufficient only when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998); *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005). In *City of Keller,* the Texas Supreme Court held the final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller,* 168 S.W.3d at 827. The Texas Supreme Court noted the legal sufficiency review requires more than a determination of whether "evidence exists that has some re-

mote relation to the verdict." *Id.* Whether using the inclusive or exclusive standard of review, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* However, we cannot "disregard undisputed evidence that allows it only one logical inference." *Id.* A reviewing court must not substitute its judgment for that of the trier of fact and must indulge every reasonable inference in favor of the verdict. *Id.*

When considering a factual sufficiency challenge, a court of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998). A court of appeals can set aside a finding only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.; Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). If we find the evidence factually insufficient, we must clearly state why the finding is insufficient or is so against the great weight and preponderance as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). In so doing, we do not pass on the credibility of the witnesses, and we do not substitute our opinion for the trier of fact, even if there is conflicting evidence on which a different conclusion could be supported. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

Non-profit Corporation Act. That Act empowers the liquidation of the Service under certain circumstances:

> The district court for the county in which the registered office of a corporation is located may order the liquidation of the assets and affairs of the corporation and may appoint a receiver to effect such liquidation, whenever circumstances demand liquidation in order to avoid damage to parties at interest, but only if all other requirements of law are complied with and if all other remedies available either at law or in equity, including the appointment of a receiver of specific assets of the corporation and appointment of a receiver to rehabilitate the corporation, are determined by the court to be inadequate and only in the following instances:
>
> . . . .
>
> (4) Upon application of any creditor if it is established that irreparable damage will ensue to the unsecured creditors of the corporation, generally, as a class, unless there be an immediate liquidation of the assets of the corporation.
>
> (5) Upon application by a member or director when it is made to appear that the corporation is unable to carry out its purposes.

Tex.Rev.Civ. Stat. Ann. art. 1396–7.06 (Vernon 2003).[2] The City and Abernathy presented the trial court with two alternative arguments to justify dissolving the Service.

The City asserts that it will suffer irreparable harm, as a creditor of the Service, if there is not an immediate liquidation of the assets of the Service. Under this theory, the City was required to prove that (1) circumstances demand dissolution in order to avoid damage to any "parties in interest," (2) all other requirements of law are complied with, (3) all other remedies available at law or in equity are inadequate, (4) the City was a creditor, and (5) irreparable harm will ensue to the unsecured creditors of the Service, generally, as a class, unless there be an immediate liquidation of the Service's assets. *See id.*

Abernathy contends the trial court erred in denying the petition because Abernathy is a member of the Service and the Service is unable to carry out its purpose. To justify dissolution under this theory, Abernathy was required to prove that (1) the circumstances demand dissolution in order to avoid damage to any "parties in interest," (2) all other requirements of law are complied with, (3) all other remedies available at law or in equity are inadequate, (4) Abernathy was a member of the Service, and (5) "the corporation is unable to carry out its purposes." *See id.*

The parties agree that, as to each claim, "all other requirements at law" had been met. There is no dispute that Abernathy

**2.** We note, since the trial in this case, the Texas Business Organizations Code has become effective. Unless an entity elects early adoption or an exception applies, the Texas Business Organizations Code does not apply to existing domestic or foreign entities until January 1, 2010. Tex.Rev.Civ. Stat. Ann. art. 1396–11.02 (Vernon Supp.2006); *see* Tex. Bus. Orgs.Code Ann. §§ 22.001, et al. (Vernon Supp.2006). The Texas Business Organizations Code standardizes processes relating to involuntary termination of all domestic business entities and is not intended as a material change. Tex. Bus. Orgs.Code Ann. § 11.001 revisor's note (LEXIS through 2006 3d C.S.). Because the Texas Non-profit Corporation Act applies to this lawsuit, this opinion relies exclusively on the Texas Non-profit Corporation Act. We also note that the Texas Business Organizations Code uses the term termination in place of dissolution or liquidation. *See* Tex. Bus. Orgs.Code Ann. § 11.001 revisor's note (LEXIS through 2006 3d C.S.). Since this opinion relies exclusively on the Texas Non-profit Corporation Act, we will use the prior terminology.

is a member of the Service. The other issues are contested.

*Factual Background*

The Service was formed as a nonprofit corporation in 1972 to provide ambulance service to the citizens of Hughes Springs and the surrounding areas. At that time, no ambulance service was available in the area, although a local funeral home had been transporting local residents. The original articles of incorporation provided "[i]n the event of dissolution ... the City of Hughes Springs, Texas, a municipal Corporation, is hereby irrevocably designated as the recipient and distributee of all assets of this corporation." For almost three decades, the Service provided ambulance service to Hughes Springs.

At some point, the Service hired Ron Wertz as chief of the Service. At a board of directors meeting on or about February 6, 1997, only four members of the board of directors were in attendance. Under the original bylaws, a quorum of five directors was required. Wertz moved to elect the two guests at the meeting as directors. The "newly constituted" board of directors approved amended bylaws for the corporation. Under the amended bylaws, the quorum requirement for membership meetings was reduced from fifteen members to five members and two officers. The quorum requirement for meetings of the board of directors was reduced from five directors to four directors.

During Wertz's tenure as chief, disputes arose between Wertz and the board of directors. At a board of directors meeting on or about March 12, 2002, one of the directors took issue with the decision to hire Patsy Wertz, Ron Wertz's wife, as a paid employee of the service. Wertz responded that the members had voted to hire Patsy Wertz and claimed the board of directors "operates as an advisory committee." Strangely enough, in response to Wertz's erroneous assertion, the board of directors voted to disband.

On May 1, 2002, a membership meeting was held with twelve members in attendance. Under the original bylaws, the directors were elected by the board of directors. At the meeting, the members voted to adopt new bylaws which provided "vacancies will be filled by election of the voting members as needed to maintain the board." The membership then proceeded to elect a new board of directors. The directors were elected for an official term starting in January 2003, but the membership also voted to appoint the directors to a temporary term from July 2002 through December 2002.

On or about September 5, 2002, Randy Kennedy, chief of the Hughes Springs Police Department, responded to a call from the home of an elderly woman, who was extremely dehydrated. Kennedy called for an ambulance from Champion Ambulance Service, a for-profit ambulance service based out of Longview. Ron Wertz heard the call over the radio and dispatched his wife, Patsy Wertz, to the scene in an ambulance from the Service. After a discussion between Kennedy and Wertz over the radio, the ambulance from the Service turned back and Champion handled the call.

That same day, Kennedy instructed all of his officers not to use the Service but to instead call Champion. Kennedy also arranged for the Cass County Sheriff's Office to call Champion as well. Abernathy testified the Service has not performed an ambulance run since November 2002. Kennedy, who had helped found the Service and was a member until the early nineties, testified that he believed Wertz had taken over the Service and was running it as his own business.

Shortly thereafter, the city council of Hughes Springs was presented with a petition signed by over four hundred residents [3] requesting *advanced* life support ambulance service (ALS). The Service was only a *basic* life support ambulance service (BLS). The city council decided to solicit bids for ALS service to be submitted within thirty days. The Service, which was not licensed to provide ALS service,[4] did not submit a bid. The City received bids from LifeNet, an ambulance service based in Texarkana, and Champion, an ambulance service based in Longview. The City eventually contracted with Champion to provide ambulance service to Hughes Springs and the surrounding area.

Despite several attempts by the Service to restore good relations with the City, including attempting to establish a first-responder organization,[5] the differences between the City and the Service have yet to be reconciled. Joseph Baker, a director of the Service, testified that since the Service has stopped providing ambulance service, the Service has continued its annual bicycle safety course, CPR course, annual child safety course, and has considered construction of a building to house an ambulance or first-responder crew.[6] Eventually, the Service amended its articles of incorporation at a board of directors meeting May 23, 2003. The amendments modified the purpose of the corporation and removed the City as "irrevocable beneficiary."[7]

### (1) The City Did Not Establish that Unsecured Creditors, as a Class, Would Be Irreparably Harmed by the Service's Continued Existence

■ According to the City, the evidence established as a matter of law the five elements necessary for the dissolution of the Service. Alternatively, the City argues that the trial court's conclusion denying dissolution is against the great weight and preponderance of the evidence.

Even if the City qualifies as a "party in interest" and as a "creditor," the City failed to show that the unsecured creditors, as a class, would suffer irreparable harm and failed to show no other remedies were available. We, therefore, reject the City's claim.

■ The City claims it is a creditor because it paid $2,661.00 for the Service's insurance coverage for 2002 through 2003 and has not been repaid those funds. Although not clear from the evidence, it appears that was the established course of dealing between the City and the Service. Although the Service made an effort to

---

3. George Fite, city administrator of Hughes Springs, testified the petition was signed by approximately 450 residents of Hughes Springs and the population of Hughes Springs is only 1856.

4. Abernathy testified that less than two percent of calls required ALS service and that Champion had provided ALS service in the past when needed.

5. A first-responder organization responds to emergency calls but is prohibited from transporting patients.

6. Fite testified the Service did do an annual bicycle safety course. However, Fites be-

lieved the CPR training was organized by Champion, but was not sure. Abernathy testified a building for an ambulance crew or first-responder organization would greatly decrease response times.

7. The original articles of incorporation provide that the City is "irrevocably designated as the recipient and distributee of all assets of this corporation." Although the term used by the City—"irrevocable beneficiary"—is not contained in the original articles of incorporation, we will use the term in the interest of convenience.

reimburse the City,[8] the City rebuffed the effort. The City claims it qualifies as a creditor based on the established course of dealing between the parties.[9] The Service contends the City does not qualify as a "party in interest" or as a creditor. It is not necessary, however, for us to determine these issues. Even if the City is a creditor and a "party in interest," the City has still failed to show irreparable harm.

The City argues it will be irreparably harmed because the Service's assets have dwindled. Eventually, the Service's assets may be reduced to the point the City can no longer collect the debt owed for insurance premiums. In addition, the City argues the reduction in the Service's assets will reduce the amount the City will ultimately receive as beneficiary. According to the City, the Service is squandering its assets. The Service contends this argument is disingenuous, because the only expenses of the corporation since the cessation of operations have been for defense of this lawsuit brought by the City.

Even if the City is a creditor and a party in interest, the City has other remedies available and has not demonstrated that it will suffer irreparable harm. The Service has assets of over $70,000.00. Abernathy testified, when she resigned as an officer of the Service in April 2002, the

Service had assets of $339,535.14, consisting of two ambulances and approximately $100,000.00 in the Service's bank account. Baker testified that, since the Service has ceased ambulance operations, the Service has had few expenses other than attorney's fees.[10] At the time of trial, the Service had approximately $70,000.00 in its bank account. In addition, the Service still owns two ambulances. The value of the ambulances at the time of trial was not established. A complete audit of the corporate assets could not be performed because the Service could not locate any member who remembered the password to the Service's computer.

The City can collect its $2,661.00 claim through means other than dissolution. The evidence conclusively established that the Service has assets well in excess of $2,661.00. The evidence is legally and factually sufficient. As such, the trial court did not err when it found the corporate assets are sufficient to prevent irreparable harm or that there were other remedies available to the City.

### (2) Abernathy Cannot Invoke the Failure of the Service's Original Purpose

As a member, Abernathy could obtain dissolution of the Service, effectively, if it

8. The Service tendered a check to the City in the amount of $2,661.00 drawn on the Service's account. Fite testified the City did not "negotiate" the check because it was concerned about the authority of the signatures on the check.

9. The City also creatively argues it was damaged because it was the "irrevocable beneficiary" and a "donee beneficiary" of the Service. Until dissolution occurs, any harm is entirely speculative. Further, a beneficiary is clearly not a creditor. Reba Simpson, mayor of Hughes Springs, testified as far as she was aware none of the Service's assets originated from the City. Under any conceivable definition of "creditor," a "donee beneficiary" or

other beneficiary would not qualify. Under this prong of the Texas Non-profit Corporation Act, the City must show irreparable harm will ensue to the unsecured creditors of the corporation, generally, as a class. Any harm the City may incur as a beneficiary cannot form a basis to dissolve under this prong of the Texas Non-profit Corporation Act.

10. Baker testified that, for a brief period of time, the Service was paying $150.00 per month to store the ambulances, but currently has storage space donated. Baker testified the Service currently has no expenses other than the cost of this lawsuit, which to date has cost at least $30,000.00.

could no longer fulfill its purpose and dissolution was necessary to avoid damage to an interested party. But the purpose of the corporation was modified by 2003 amendments, if those amendments are valid. The 2003 amendments are valid if 1997 amendments to the bylaws must stand. We conclude that, because Abernathy cannot now attack the 1997 amendments, those amendments stand and that, therefore, the purposes have been effectively amended. Because the Service's amended purpose can be fulfilled, Abernathy's effort to seek dissolution must fail.

To justify dissolution under her theory, Abernathy[11] was required to prove the Service is unable to carry out its purpose. The trial court found that Abernathy was a member of the corporation, and that finding is not challenged on appeal. Therefore, if the Service can no longer perform its purpose, the Service should have been dissolved.

Abernathy claims the Service should be dissolved because the original purpose can no longer be performed. The original articles of incorporation stated that the Service was formed "[t]o operate an ambulance service." The evidence at trial conclusively established the Service can no longer operate an ambulance service.

In Texas, a nonprofit corporation can amend its articles of incorporation—provided the amendment is made pursuant to the procedures required in the original articles of incorporation. *See* TEX.REV.CIV. STAT. ANN. art. 1396–4.01 (Vernon 2003); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex.2004). The Service argues the articles of incorporation were properly amended in 2003 to provide a new purpose statement for the Service:

to provide various services to the community which relate to the health and safety of the citizens in the Hughes Springs area, including educational programs to the citizens of Hughes Springs and the surrounding areas and to those who provide life savings services to victims of injury or sudden illness and/or other disasters.

The trial court found that the articles had been properly amended and that the Service could carry out the amended purpose.

Despite numerous irregularities predating the 2003 amendment, we conclude the articles were properly amended in 2003. While certain prior actions taken in the governance of the Service may have been voidable, the principal inquiry is whether the board of directors which amended the articles in 2003 was properly elected and properly did so at that time.

*A. Neither the 1997 nor the 2002 Bylaws Were Properly Adopted*

■ At trial, Abernathy challenged whether the articles of incorporation were properly amended. Abernathy in essence contends all actions of the board since the 1997 amendments to the bylaws have been ultra vires acts. The original bylaws of the Service provided that a quorum for any meeting of the board of directors "shall consist of not fewer than five (5) members of the Board" and required that the articles of incorporation be amended by a two-thirds vote of the board of directors.

Although the only evidence of what occurred at the meeting February 6, 1997, are the written minutes of the meeting;[12] the written minutes contain irregularities on their face. According to the minutes,

11. Because the City is not a member of the Service, the City lacked standing, under the Texas Non-profit Corporation Act, to dissolve the corporation based on an inability of the Service to perform its purpose.

12. At trial, Joseph B. Baker, who was elected as a member of the Service's board of directors in 2002, testified that the 1997 bylaws appeared to be properly adopted. Baker, though, admitted that he did not have any

only four members of the board of directors were in attendance. Ron Wertz moved to elect the two guests at the meeting as directors. The motion was seconded and approved. The newly constituted board then voted to approve the proposed bylaws. Without a quorum, the board could not transact any business, including electing new board members. The evidence conclusively established the 1997 bylaws were not properly amended.

Further, the bylaws were not properly amended in 2002, either. The minutes of the meeting indicate the membership voted to amend the bylaws. However, both the original bylaws and the 1997 amended bylaws provide the bylaws can be amended only by the board of directors. Thus, regardless of which version of the bylaws was effective at the time of the 2002 amendments, the membership was not authorized to amend the bylaws. Baker testified he did not believe the 2002 bylaws were properly amended. The evidence conclusively established that the 2002 bylaws were not properly amended.

### B. Abernathy Is Barred From Challenging the 1997 Amendments to the Bylaws

Despite numerous irregularities in procedure, the only act which has a substantial impact on this appeal is the amendment of the articles. In order for the amendments to be valid, there must have been a quorum of the board of directors and the directors must be legitimate.

■ The trial court found that the 1997 bylaws were in effect in 2003 based on two things: (1) that the improper procedures being merely voidable acts rather than void acts and (2) the doctrine of laches.[13] We agree with the trial court. In *Swain*

v. *Wiley College*, this Court held that an action taken in violation of the corporate bylaws is merely voidable rather than void. 74 S.W.3d 143, 147 (Tex.App.-Texarkana 2002, no pet.); see *Popperman v. Rest Haven Cemetery, Inc.*, 162 Tex. 255, 345 S.W.2d 715 (1961). A voidable act may be subsequently ratified or confirmed. *Swain v. Wiley College*, 74 S.W.3d at 146. Because the irregularities in the adoption of the 1997 bylaws were not challenged for over seven years, the trial court did not err in concluding the voidable act was ratified. Abernathy, who was a member of the Service since 1998 and served as both an officer and director of the corporation, is prohibited from challenging the actions based on laches. See *Brewer v. Nationsbank*, 28 S.W.3d 801, 804 (Tex.App.-Corpus Christi 2000, no pet.). The evidence is legally and factually sufficient to support the trial court's conclusion.

The trial court found that the directors were appropriately elected after the board disbanded. Under the 1997 bylaws, the members were able to elect the board of directors. The evidence at trial would enable a reasonable and fair-minded person to conclude the board of directors was properly elected. Further, this finding is not against the great weight and preponderance of the evidence. Because Abernathy is barred from challenging the 1997 bylaws and the board of directors was properly elected, the 2003 amendments to the articles of incorporation are valid. The evidence is legally and factually sufficient that the Service can perform its purpose as amended.

### (3) The Cy Pres Doctrine Does Not Apply

■ Abernathy argues that the doctrine of cy pres authorizes a court to effec-

---

personal knowledge of events which occurred in 1997. Baker's evidence is certainly not sufficient for reasonable minds to differ.

13. The differences between the 1997 bylaws and the 2002 bylaws are insignificant for the purposes of this inquiry.

tuate the general charitable purpose of a charitable nonprofit corporation. In support of this contention, Abernathy cites *Abbott v. Blue Cross*, 113 S.W.3d 753 (Tex. App.-Austin 2003, pet. denied); *Baywood Country Club v. Estep*, 929 S.W.2d 532 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *Blocker v. State*, 718 S.W.2d 409, 411 n. 1 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). "*Cy pres* authorizes a court in equity to effectuate the general charitable purpose of a donor when his particular intention can no longer be carried out, whereupon the court can direct the gift to be used in a similar charitable manner as near the donor's intent as possible." *Baywood Country Club*, 929 S.W.2d at 537.

■ The phrase *cy pres* probably comes from the Norman French expression *cy pres comme possible*, meaning "as near as possible." *Blue Cross*, 113 S.W.3d at 760. This doctrine is normally used in the context of a charitable trust. *See* 12 Tex. Jur.3d *Charities* § 17 (2004). If it is impossible, impractical, or illegal to carry out the terms of a charitable trust and the settlor has indicated a general charitable purpose, the doctrine of *cy pres* authorizes a court to substitute another charitable scheme within that general purpose. *Blue Cross*, 113 S.W.3d at 760. For the doctrine to apply, there must exist a charitable trust established for a general charitable purpose, whose original charitable purpose has failed. *Id.*

In *Blue Cross*, the Texas Attorney General argued the trial court erred in finding the doctrine of *cy pres* did not apply. According to the Texas Attorney General, Blue Cross was a public charity which must preserve its assets for charitable purposes. We believe that the dicta contained in *Blue Cross* is distinguishable from the current case. First, *Blue Cross* held that

Blue Cross was not a common-law charity and rejected the Attorney General's argument. As such, the discussion of *cy pres* would be merely dicta. Second, even if Blue Cross was a common-law charity, the assets of Blue Cross were being converted from a charitable purpose to a noncharitable purpose. In this case, even if the Service is a charity, its assets will be converted from one charitable purpose to another charitable purpose—consistent with the doctrine of *cy pres*. The purpose of *cy pres* is to "effectuate the general charitable purpose of the testator when his particular intention cannot be carried out." *Blocker*, 718 S.W.2d at 411 n. 1. The doctrine of *cy pres* does not prohibit the Service from amending its purpose or require the Service to be dissolved.

Even if the City qualifies as a "party in interest" or as a "creditor," the City failed to show that the unsecured creditors, as a class, would suffer irreparable harm and failed to show that no other remedies were available. Because the Service has assets much greater than $2,661.00, the City will not suffer irreparable harm—as a creditor—and has other remedies available. As discussed above, the doctrine of laches bars Abernathy from challenging the 1997 amendments to the bylaws. Under the 1997 bylaws, the 2003 amendments, which modified the purpose of the corporation, are valid. Because the Service is able to carry out its purpose as amended, Abernathy failed to prove the Service can no longer carry out its purpose. The evidence is legally and factually sufficient to support the trial court's findings of fact. Further, the trial court did not abuse its discretion in failing to appoint a receiver.

We affirm the judgment of the trial court.