Reversed and Remanded and Memorandum Opinion filed June 15, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00019-CV

___________________

 

Thomas Swonke and Christopher Goodrich,
Appellants

 

V.

 

First Colony Community Services Association,
Inc., Appellee



 



 

On
Appeal from the 400th District Court

Fort Bend County,
Texas



Trial Court Cause No. 07-CV-160602

 



 

 

MEMORANDUM OPINION

Thomas Swonke and Christopher Goodrich,
collectively “appellants,” appeal from the grant of a plea to the jurisdiction,
and in the alternative, motion for summary judgment, in their lawsuit against
First Colony Community Services Association, Inc. (“the Association”).  The
Association is a homeowners’ association of which appellants are members.  In
their lawsuit, appellants asserted improprieties in the Association’s board of
directors election in December 2007 and requested declaratory and injunctive
relief.  In its combined motion and plea, the Association asserted that appellants
lacked standing to maintain their claims and that those claims were without
merit as a matter of law.  We reverse the trial court’s judgment and remand for
further proceedings in accordance with this opinion.

I.  Background[1]

            The Association
is a nonprofit corporation homeowners’ association for the First Colony
subdivision in Sugar Land, Texas.  The subdivision’s developer, Sugar Land
Properties, Inc., is listed as the sole “Class B” member in the Association’s
bylaws, and the “Class A” membership consists of residential and business
property owners within the subdivision.  As “Declarant” under the bylaws, Sugar
Land Properties retained considerable control over operation of the Association
until such time as its status as Class B member was revoked under conditions
set forth in the bylaws.  Among the rights invested in the Declarant by the
bylaws was the right to unilaterally amend the bylaws, “so long as no
substantive rights of any existing [subdivision] Owner [were] adversely
affected.”

The bylaws further provided for an annual election to
fill seats on the board of directors.  Specifically, each year the existing
board of directors was required to appoint a “Nominating Committee” to consider
applications from persons seeking positions as directors.  The committee would
then nominate applicants to appear on the election ballot at the annual meeting
of members.  Other nominations could also be made “from the floor” at the
meeting.

On August 23, 2007, the board of directors appointed
appellant Goodrich to serve on the nominating committee.  Incumbent director
Rod Craig was appointed as committee chair, five additional Association members
were also appointed to the committee, and two alternates were named as well.  Also
on August 23, a “Proposed Timeline” was prepared which included a date of
October 15, 2007 for interviewing candidates, but no time of day or place was
specified for the proposed meeting.  Appellant Swonke applied to be a candidate
for the board in the December 6, 2007 election.  No meeting of the nominating
committee took place on October 15.  In the evening of October 18, 2007,
chairman Craig sent an email to committee members stating that the committee
would meet at 7:45 on October 20.  This was the only meeting of the nominating
committee appointed in August 2007.  In his affidavit, appellant Goodrich
acknowledged having received Craig’s email notification, but he stated that he did
not attend the meeting.  In all, only Craig and three of the six other
committee members attended the meeting.  Neither alternate attended the
meeting.  The committee did not select Swonke as a nominee.

Appellants Swonke and Goodrich then filed the present
lawsuit against the Association, alleging principally that (1) the wrong
nominating committee met to consider director applications for the December
2007 election; and (2) the committee meeting was improperly convened, in part
because notice was not proper.  Specifically as to the proper nominating
committee for consideration of candidates for the December 2007 meeting,
appellants point out that under the bylaws, the nominating committee must be
appointed “not less than thirty (30) days prior to each annual meeting of the
Members to serve from the close of such annual meeting until the close of the
next annual meeting, and such appointment shall be announced at each such
annual meeting.”  Appellants asserted that under this provision, the proper nominating
committee would have been one nominated prior to the December 2006 annual
meeting, to serve from the close of that meeting until the close of the 2007
meeting.  Thus, according to appellants, the committee appointed in August 2007
had no authority to consider nominations for the 2007 meeting.

Regarding the allegedly improper meeting notice,
appellants asserted that (1) the only notice was via email; (2) only three of
six members, other than chairman Craig, attended the meeting; and (3) no
written waiver of notice was submitted by the nonattending members.  Appellants
further asserted that prior to the filing of the lawsuit, the board of
directors was informed of the problems with the nominating committee by both
Goodrich and a member of the board, Myatt Hancock, but nothing was done to cure
the improprieties.

Appellants filed their Original Petition prior to the
December 2007 election.  The pleading incorporated an application for a
temporary restraining order, temporary injunction, and permanent injunction as
well as a request for a declaratory judgment, essentially in an attempt to
prevent the Association from moving forward with the election.  After a hearing
on the request for a temporary injunction, the trial court denied the
application.  The December 2007 election then went forward, and Swonke was
neither nominated from the floor nor elected to the board of directors.  Appellants
thereafter filed a motion for summary judgment in which they made the above
accusations and requested a declaration that (1) the December 2007 election was
void; (2) the three directors elected at that meeting were therefore not
legally elected to the board; (3) “[a]ny actions taken or votes casts by” those
three individuals were void; and (4) the presence of those individuals at board
meetings should not be counted for purposes of determining whether a quorum
existed at those meetings.  Appellants further requested court costs and
attorney’s fees.

In response to appellants’ lawsuit, the Association
filed a combined plea to the jurisdiction and motion for summary judgment.  In
the plea, the Association asserted that appellants lacked standing to bring
their claims because they did not have a justiciable interest in the matters
alleged and had not been personally aggrieved.  In its motion for summary
judgment, the Association asserted, among other things, that in 1994, Sugar
Land Properties, as Declarant under the bylaws, had amended the bylaws to
permit ad-hoc appointment of the nominating committee as opposed to appointment
of an annual standing committee to begin service at the close of each annual
meeting.  Specifically, the Association claimed that the Declarant amended the
bylaws through action by the 1994 board of directors.  Furthermore, the
Association alleged that the ad hoc procedure had been the practice since 1994,
and no objections had been made until the 2007 complaints which culminated in
the present lawsuit.  The Association further maintained that the amendment did
not affect anyone’s substantive rights and urged the court to not interfere in
the inner workings of the nominating committee.

As stated above, the trial court granted the
Association’s combined plea to the jurisdiction and motion for summary judgment
and denied appellants’ motion for summary judgment.  The court also awarded
attorney’s fees to the Association in the amount of $20,000.  We will begin by
addressing the jurisdictional argument raised below by the Association
(standing) as well as the jurisdictional argument it raises for the first time
on appeal (mootness).  We will then consider the merits of the Association’s
motion for summary judgment, which the trial court granted, and appellants’
motion for summary judgment, which the trial court denied.  Lastly, we will
consider whether the trial court properly awarded attorney’s fees to the
Association.

II.  Jurisdiction

A.  Plea to the Jurisdiction—Standing

In their third issue, appellants contend that the
trial court erred in granting the Association’s plea to the jurisdiction.  As
stated above, in its plea to the jurisdiction, the Association asserted that
appellants did not have standing because they did not have a justiciable
interest in the matters alleged and had not been personally aggrieved by any
alleged actions of the Association.  Standing is a constitutional prerequisite
for a party to bring a lawsuit.  Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 444 (Tex. 1993).  A court has no jurisdiction over a claim
pursued by a plaintiff who lacks standing to assert the claim.  DaimlerChrysler
Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008).  When a plaintiff lacks
standing, the proper disposition is to dismiss the lawsuit.  Id.  The
test for standing requires that there be a real controversy between the parties
which will actually be determined by the judicial declaration sought.  See
Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661
(Tex. 1996).  “A plaintiff has standing when [he or she] is personally
aggrieved, regardless of whether [he or she] is acting with legal authority . .
. .”  Id. (emphasis omitted).  Without breach of a legal right belonging
to the plaintiff, no cause of action can accrue to his benefit.  See Nobles
v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976).  “The issue of standing focuses
on whether a party has a sufficient relationship with the lawsuit so as to have
a ‘justiciable interest’ in its outcome . . . .”  Austin Nursing Center,
Inc. v. Lovato, 171 S.W.3d 845, 848 (Tex. 2005).  For a controversy to be
justiciable, there must be a real controversy between the parties that will
actually be resolved by the judicial relief sought.  State Bar of Texas v.
Gomez, 891 S.W.2d 243, 245 (Tex. 1994).

We review a trial court’s ruling on a plea to the
jurisdiction de novo.  State Dep’t of Highways & Pub. Transp. v.
Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002).  In such a review, we must
determine whether facts have been alleged that affirmatively demonstrate
jurisdiction.  City of Waco v. Lopez, 259 S.W.3d 147, 150 (Tex. 2008).  In
doing so, we construe the pleadings liberally in favor of the plaintiff, and any
fact questions regarding jurisdiction will prevent us from affirming the trial
court’s order.  Id.

            Appellants
contend that as members of the Association and as “aggrieved parties with respect
to the 2007 election proceedings,” they have standing to bring this lawsuit. 
More specifically, appellants maintain that they were personally aggrieved by the
fact that Swonke was denied consideration of his board of directors candidacy
by the proper nominating committee and at a properly noticed committee meeting,
and Goodrich was denied proper notice of the sole meeting of the committee to
which he was appointed.  We agree with appellants that the facts as alleged were
sufficient to demonstrate that they were personally aggrieved.  As members of
the association, they have standing to complain that the nominating committee
meeting was not conducted pursuant to the bylaws and that they were denied
roles in the governance of the association in violation of the bylaws.  Cf. Swain
v. Wiley College, 74 S.W.3d 143, 148-50 (Tex. App.—Texarkana 2002, no pet.)
(holding that college president did not have standing to complain regarding
violation of bylaws respecting meeting of board of trustees because he was neither
a member of the nonprofit corporation nor a voting member of its board of
trustees); Stolow v. Greg Manning Auctions, Inc., 258 F. Supp. 2d 236,
249-50 (S.D.N.Y. 2003) (holding that plaintiff lacked standing to bring suit
for violations of association’s bylaws because he was not a member of the
association).

B.  Appellate Argument—Mootness

For the first time on appeal, the Association argues
that the trial court lacked subject matter jurisdiction because the relief
appellants requested in their original petition has become moot.  Mootness is a
threshold issue in determining subject matter jurisdiction.  See Speer v.
Presbyterian Children’s Home & Serv. Agency, 847 S.W.2d 227, 229 (Tex.
1993).  The purpose of the mootness doctrine is to prevent courts from
rendering advisory opinions, in violation of article II, section 1 of the Texas
Constitution.  Tex. Const. art. II, § 1; Valley Baptist Med. Ctr. v.
Gonzalez, 33 S.W.3d 821, 822 (Tex. 2000).  An issue may become moot when a
party seeks a ruling on some matter which, when rendered, would not have any
practical legal effect on a then-existing controversy.  In re H&R Block
Financial Advisors, Inc., 262 S.W.3d 896, 900 (Tex. App.—Houston [14th
Dist.] 2008, orig. proceeding).

            The Association
specifically points out that the 2007 board of directors election “has long
since passed,” and appellants never filed an amended petition requesting different
relief in light of that fact.  In their original petition, appellants requested
specific declaratory and injunctive relief premised largely on the fact that
the contested election had not yet occurred.  For example, appellants requested
declarations stating that the nominating committee appointed on August 23,
2007, should not begin serving until December 6, 2007 (at the close of the
December members’ meeting), and that the nominations already made by that
committee for the December 2007 election were “invalid, illegal, and void.”  The
Association contends that because all of the relief appellants requested in
their petition had been rendered moot by the holding of the election, the trial
court was without jurisdiction to consider the merits of appellants’ claims.

In response, appellants point out that in their
motion for summary judgment, they requested additional relief, relief which
recognized that the contested elections had by then taken place.  For example,
appellants requested that the trial court declare that the December 2007
election was “invalid, illegal, and void,” and that any action taken or votes
cast by individuals elected to the board in that election were “invalid,
illegal, and void.”  Appellants contend that because they included these
requests for relief in their motion, presented evidence in support, and the
Association did not raise the alleged pleading deficiency in response to the
motion, the requested relief was tried by consent.  See Tex. R. Civ. P.
67 (“When issues not raised by the pleadings are tried by express or implied
consent of the parties, they shall be treated in all respects as if they had been
raised in the pleadings.”).  We agree.  The Texas Supreme Court has held that
issues raised in the summary judgment context can be tried by consent.  Roark
v. Stallworth Oil and Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991).  Courts,
including this one, have also indicated that requests for particular relief can
also be tried by consent.  See, e.g., Pickelner v. Adler, 229 S.W.3d
516, 523 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); City of Houston
v. Harris County Outdoor Advertising Ass’n, 879 S.W.2d 322, 336 (Tex.
App.—Houston [14th Dist.] 1994, writ denied).  Because appellants clearly
requested post-election relief in the motion for summary judgment, and the
Association responded to the motion without objecting to the alleged lack of a
proper pleading, we find that appellants’ requests for relief were tried by
consent.  Therefore, the mootness doctrine does not bar appellants’ claims.[2]

            The trial court
had subject matter jurisdiction over the claims raised by appellants.  Because the
trial court erred in granting the Association’s plea to the jurisdiction, we
sustain appellants’ third issue.

III.  The Association’s Motion for Summary Judgment

In their second issue, appellants contend that the
trial court erred in granting summary judgment favoring the Association.  We
analyze the grant of a traditional motion for summary judgment under
well-established standards of review.  See generally Tex. R. Civ. P.
166a; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
Because summary judgment is a harsh remedy, a reviewing court will strictly
construe procedural and substantive matters against the movant.  E.g.,
Tanksley v. CitiCapital Commercial Corp., 145 S.W.3d 760, 763 (Tex.
App.—Dallas 2004, pet. denied).  The movant bears the burden to show that there
is no genuine issue of material fact and that it is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c).  We review the motion and the evidence
de novo, taking as true all evidence favorable to the nonmovant, and indulging
every reasonable inference and resolving any doubts in the nonmovant’s favor.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Where, as here,
both sides filed motions seeking summary judgment on the same issue, and the
trial court granted one while denying the other, we review both sides’ summary
judgment evidence, determine all questions presented, and, if the trial court
erred, render the judgment the trial court should have rendered.  Id.  A
summary judgment cannot be affirmed on grounds not expressly set out in the
motion or response.  Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26
(Tex. 1993).

As discussed above, appellants’ primary allegations
in their pleadings were that (1) the nominating committee appointed on August
23, 2007 was the incorrect committee to consider director applications for the
December 2007 election; and (2) the committee meeting was improperly convened. 
On appeal, the Association asserts that it was entitled to judgment as a matter
of law because (1) the bylaws were amended in 1994, making the August 23, 2007
committee the proper committee for considering applicants for the 2007
election; (2) the Association has followed the practice of appointing the
nominating committee during the year prior to the election since 1994; and (3)
appellants were not harmed and have no basis for recovery.  We will discuss
each purported ground in turn.[3]

A.  Alleged 1994 Amendment

In their petition, appellants pointed out that the original
bylaws of the Association required that the nominating committee must be
appointed “not less than thirty (30) days prior to each annual meeting of the
Members to serve from the close of such annual meeting until the close of the
next annual meeting, and such appointment shall be announced at each such
annual meeting.”  Appellants maintain that pursuant to this provision, the
nominating committee for the 2007 election should have been appointed prior to
the December 2006 annual meeting, and not over halfway through the 2007 fiscal
year.  Consequently, according to appellants, the committee appointed in August
2007 had no authority to consider nominations for the 2007 meeting; instead,
such nominations should have been considered by the committee appointed prior
to the 2006 annual meeting.

In its motion, the Association contended that the
bylaws were amended in 1994.  In support of this assertion, the Association
attached testimony by Carl Favre from an earlier hearing on appellants’ request
for a temporary injunction.  Favre identified himself as having been general
counsel for Sugar Land Properties since 1987.  He testified that in 1994, the Association’s
board of directors “adopted by resolution” a recommendation from a task force
that the nominating committee should not be a “standing committee” but should
“only serve on an ad-hoc basis during the annual election time, serving only
for a specific year’s selection process.”[4] 
Favre understood this recommendation to mean that the committee should serve
its function of finding qualified candidates “just before the annual meeting.”[5]  Favre stated that
he could not remember whether Sugar Land Properties was still supposed to “sign
off on resolutions and amendments” in 1994, but he believed it still had the
ability to veto board action with which it did not agree.  Favre indicated that
he considered the board’s adoption of the resolution to have amended the bylaws
despite the fact that no “clarifying amendment to the bylaws” was subsequently recorded
in the property records.[6] 
Favre further acknowledged, however, that in 1994, the only methods by which
the bylaws could have been amended were (1) by Sugar Land Properties as
Declarant, and (2) by majority vote of all property owners in the subdivision. 
When asked specifically whether it was in the Declarant’s authority “to change
the timing of when the committee was appointed,” Favre replied:  “I believe we
could have and should have, and I think we did by this original issue.”

Based on Favre’s testimony, the Association contended
that the Declarant acted through the board in amending the bylaws and that no
special procedure was required for amendment.  However, neither Favre’s
testimony nor the question of amendment is that straight forward.  Although
Favre stated a belief that board action was sufficient to amend the bylaws, he
also acknowledged that only the Declarant or a majority of subdivision owners
could amend the bylaws.  He failed to explain how action by the board of directors
could be interpreted as action by the Declarant.  He did not assert that the
Declarant directed the board to approve the task force’s recommendation,
otherwise expressed approval of this action in some way, or even knew about the
board’s action or the task force’s recommendation.  While it is conceivable
that the Declarant exercised such control over the board that board action
could be considered action by the Declarant, Favre’s testimony does not
conclusively establish this connection for summary judgment purposes.  See
Tex. R. Civ. P. 166a(c) (“A summary judgment may be based on uncontroverted
testimonial evidence of an interested witness . . . if the evidence is clear,
positive, direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted.”); Tex.
Div.—Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994) (“[A
witness’s] subjective beliefs are no more than conclusions and are not competent
summary judgment evidence.”).

The summary judgment evidence propounded by the
Association does not conclusively establish that the bylaws were amended in
1994 so as to make the August 23, 2007 committee the proper committee for
considering applicants for the December 2007 election.  The trial court erred
if it based summary judgment on this ground.[7]

B.  Established Practice Since 1994

In its appellate briefing, the Association further
contends that because it followed the practice of appointing the nominating
committee pursuant to the 1994 task force recommendations for twelve years
without objection, this continuing practice “ratified the 1994 amendment” as a
matter of law, citing City of Hughes Springs v. Hughes Springs Volunteer
Ambulance Serv., Inc., 223 S.W.3d 707, 714-15 (Tex. App.—Texarkana 2007, no
pet.).  In their reply brief, appellants argue that the Association waived its
ratification argument by not making it below.  We agree.  In its motion for
summary judgment, the Association referenced the purported following of the
1994 amendment only in support of the conclusion that such amendment had in
fact been effectuated.  It did not make this a separate basis for summary
judgment and did not mention the doctrine of ratification either by name or
through argument.  A summary judgment cannot be affirmed on grounds not expressly
set out in the motion or response.  Stiles, 867 S.W.2d at 26; see
also Nexen Inc. v. Gulf Interstate Eng’g Co., 224 S.W.3d 412, 423
(Tex. App.—Houston [1st Dist.] 2006, no pet.) (“Summary judgment cannot be
rendered on a basis that was not asserted in the movant’s motion as a ground
for summary judgment.”).  The trial court erred if it granted summary judgment
on the basis of ratification.

C.  Basis for Relief

            In its motion, the
Association additionally asserted that as a matter of law:  “Plaintiffs have no
basis to seek damages, costs, fees, a declaratory judgment and/or any other
relief against Defendant.”  In support, the Association referenced the trial
court to an order (attached as an exhibit to the motion) purporting to deny appellants’
request for a temporary injunction.  In this order, it is stated that “the
amendment to the process of appointing the nominating committee does not affect
the substantive rights of anyone, and the Court will not intervene in the inner
workings of the Committee.”[8] 
The attached order, however, was not signed by the trial judge.  In fact, it
appears from the record that the actual order that the judge signed denying the
temporary injunction does not contain this language or any specific reason for
the denial.  Moreover, even if the signed order contained the language in
question, it would constitute neither summary judgment argument nor evidence.  See
generally Tex. R. Civ. P. 166a(c) (listing types of summary judgment
evidence).  The Association did not make any other arguments or reference any
other evidence in support of this ground for summary judgment.  Accordingly,
the trial court erred if it granted summary judgment on this ground.[9]

            Because the
Association failed to establish entitlement to judgment on any grounds raised
in its motion, the trial court erred in granting summary judgment favoring the
Association.  Accordingly, we sustain appellants’ second issue.

IV.  Appellants’ Motion for Summary Judgment

            In their first
issue, appellants contend that the trial court erred in denying their motion
for summary judgment.  In their motion, appellants contended that they
established as a matter of law that (1) the Association failed to conduct the
December 2007 election in accordance with the bylaws, and (2) notice of the
nominating committee meeting was invalid, and there were no waivers of such
notice pursuant to the bylaws.  Utilizing the same summary judgment standards
set forth above, we will address each ground for summary judgment in turn.

A.  Violation of Bylaws

            In their first
ground, appellants argued that the Association violated the bylaws in the
selection and operation of the nominating committee.  Specifically, they asserted
that under the bylaws, the nominating committee appointed in August 2007 was
not the correct committee to consider candidate applications for the December
2007 board election.  Instead, according to appellants, the bylaws in force
during 2006 and 2007 required that the nominating committee be appointed before
the 2006 annual meeting to serve from the end of that meeting until the 2007
annual meeting.  Thus, the proper nominating committee to consider candidates
for the 2007 election would have been one appointed in 2006, not August 2007. 
In support of this ground for summary judgment, appellants presented the
original Association bylaws as well as various affidavits and documents relating
to the committee appointed in August 2007.

            In response to
this ground, the Association again contended that the bylaws were amended in
1994 when the board of directors voted to approve the amendments proposed by
the task force.  As discussed above, the Association presented evidence,
principally in the form of hearing testimony from its general counsel, Carl
Favre, suggesting that Sugar Land Properties, in its capacity as Declarant, operated
through the board to amend the bylaws.  According to Favre, the bylaws were
amended in 1994 to change the time period for which each nominating committee
was in existence such that the proper committee for the December 2007 election
would have been appointed during 2007.  In the above discussion of the
Association’s motion for summary judgment, we explained that Favre’s testimony
failed to conclusively demonstrate that the bylaws were in fact amended
in 1994.  However, in considering whether the trial court properly denied appellants’
motion for summary judgment, we are, of course, mindful that the burden of
proof respecting that motion was on appellants, not the Association.  The
Association could defeat the motion simply by presenting evidence raising a
disputed issue of material fact.   See Tex. R. Civ. P. 166a(c).  In this
context, evidence favorable to the Association, as non-movant, is to be taken
as true, and every reasonable inference from that evidence must be indulged in
the Association’s favor.  See Valence Operating, 164 S.W.3d at 661. 
Favre’s testimony that he personally believed that amendment occurred is of
little weight.  However, it could be reasonably inferred from the Association’s
evidence that the amendment was in fact adopted by the Declarant through the
board’s action.  Favre indicated that the Declarant had the power to amend the
bylaws in 1994, but the board by itself did not.  He further stated that in 1994,
the Declarant still appointed the Board and retained “the ability to veto any
action by the board [that] was not in the best interest of [the] development.” 
Furthermore, both Favre’s testimony and an affidavit by a board member
indicated that the board had followed the alleged 1994 amendment in appointing
the nominating committee for at least certain elections and possibly for every
election held since 1994.  The statements made by Favre and the board member
are ambiguous regarding the exact extent to which the alleged amendments have
been followed and for what period of time.  However, indulging every reasonable
inference in the Association’s favor, this evidence is sufficient to suggest
that the board has followed the alleged amendments as though the bylaws had in
fact been amended.  Taken altogether, the evidence presented by the Association
raises a fact issue as to whether amendment actually occurred in 1994.  Thus,
appellants were not entitled to summary judgment on the ground that the
Association violated the original bylaws by having a committee appointed in
August 2007 select candidates for the December 2007 election.

            In their motion,
appellants additionally contended that even if amendment occurred in 1994, the
task force’s recommendations did not actually amend the prior bylaws concerning
the nominating committee but instead “affirm[ed]” the existing bylaws.  We
disagree.  The task force recommended that the nominating (“Nominations”)
committee, as established in the original bylaws, “be disbanded” and reformed
with “newly established responsibilities.”  This does not suggest that the
recommendation was to affirm the prior bylaws governing the committee. 
Furthermore, the recommendations state that:  “Nominating Committee should not
be a standing committee but only serve on an ad-hoc basis during annual
election time, serving only for a specific year’s selection process.”  This
sentence indeed suggests that the committee would be in existence only during
“a specific year’s selection process.”  Accordingly, appellants’ argument that
even if the 1994 recommendations amended the bylaws, they would not have changed
the formation or operation of the nominating committee is without merit.  The
trial court did not err in denying appellants’ motion for summary judgment on
the ground that the wrong nominating committee considered board candidates for
the December 2007 election.

B.  Committee Meeting Notice

            In their second
ground, appellants contended that the ballot used for the December 2007 board
of director’s election was illegal because the candidates on that ballot were
chosen at an invalidly called meeting of the nominating committee.  More
specifically, appellants contended that notice of the sole nominating committee
meeting to consider candidates for that election was invalid and that there
were no waivers of such notice submitted pursuant to the bylaws.  In support of
their contentions, appellants presented evidence that the only notice of the
meeting was sent by email to committee members less than two days before the
meeting and that no notice at all was sent to committee alternates.  According
to appellants, email was not a proper form of notice under either the
Association’s bylaws or applicable Texas law.  Ultimately, of the seven members
of the board and two alternates, four members (including the chairman) and no
alternates attended the meeting.  The members and alternates who failed to
attend did not provide any waiver of notice.  Appellant Goodrich stated in his
affidavit that he informed the Association’s board of directors regarding the
improper notice prior to the December election.  Similarly, in his affidavit,
board of directors member Myatt Hancock stated that he sent a letter to the
board on October 24, 2007, apprizing it of various procedural problems relating
to the nominating committee.

In response to this ground, the Association principally
urged the trial court to follow the general inclination of Texas courts to not
interfere in the internal management of voluntary associations.  See Stevens
v. Anatolian Shepherd Dog Club of Am., Inc., 231 S.W.3d 71, 74-75 (Tex.
App.—Houston [14th Dist.] 2007, pet. denied).  On appeal, the Association
further asserts that email was a proper form of notice.  We will begin by
addressing whether the general rule discussed in Stevens is applicable
to appellants’ claims; we will then consider whether email was an acceptable
form of notice, and finally, whether appellants are entitled to a grant of
summary judgment on this ground.

1.  Applicability of General Rule

As we explained in Stevens, courts of this
state generally “are not disposed to interfere with the internal management of
a voluntary association,” but will still do so “if a valuable right or property
interest is at stake,” or if the association in question fails to “accord their
members something similar to due process.”  Stevens, 231 S.W.3d at
74-75.  Additionally, for the rule to apply, the governing body of the
association may not “substitute legislation for interpretation, overstep bounds
of reason, common sense, or fairness, or contravene public policy or laws of
the land in its interpretation and administration.”  Id. at 75.

The parties initially dispute whether the general
rule can apply to the Association.  Appellants assert that the general rule
does not apply because the Association has not demonstrated that it is a
“voluntary” organization as opposed to an organization for which membership was
mandatory for people living in the First Colony subdivision.  The Association
does not dispute that membership for residents of the subdivision was
mandatory, but instead, argues that because people could choose to either live
or not live in the subdivision, membership was still voluntary.  We do not need
to resolve this dispute regarding the nature of the Association because even if
the general rule of noninterference applies to the Association, the dispute at
issue in this case is not the sort of internal management issue the general
rule contemplates.

Appellants here assert that the Association violated
its own bylaws and the laws of Texas pertaining to election of its governing
body.  The power of the nominating committee is not inconsequential in this
regard.  Under the original bylaws, the members of the committee were
authorized to consider applications for board candidacy and determine which of
the applicants would be placed on the printed ballot.  The members could
nominate as many or as few candidates as they chose, as long as they selected
at least one candidate for each seat up for election.  Additionally, board
members apparently were authorized to determine for themselves the criteria to
be used in accepting and rejecting candidates for nomination.  Although the
bylaws also permitted nominations to be made “from the floor,” it is beyond question
that generally, it would be better to be on the printed ballot than to be a
write-in candidate.  Moreover, Goodrich’s entitlement to participate in the
committee’s deliberations, and Swonke’s interest in being considered for
nomination at a properly noticed meeting of the committee, would appear to be
valuable rights, particularly in light of the fact that they owned property in,
and made their homes in, the subdivision governed to some extent by the
Association.  See Stevens, 231 S.W.3d at 74-75; see also Chen v. Tseng,
No. 01-02-01005-CV, 2004 WL 35989, at *5 (Tex. App.—Houston [1st Dist.] 2004, no
pet.) (mem. op.) (affirming trial court’s finding that alleged directors of
incorporated religious group had not been lawfully elected at meeting called
without written notice); Scoville v. SpringPark Homeowner’s Ass’n, Inc.,
784 S.W.2d 498, 506 (Tex. App.—Dallas 1990, writ denied) (Ovard, J., dissenting)
(discussing “unique interrelationship between a homeowners’ association and its
members” and noting that such associations have been analogized to “private
government[s]”); Owens Entm’t Club v. Owens Cmty. Improvement Club, 466
S.W.2d 70, 72 (Tex. Civ. App.—Eastland 1971, no writ) (holding that a club
member’s right to participate in the determination of what to do with a
building that the club owned was a great enough interest to justify
interference).  Consequently, if the trial court determined to not address the
merits of appellants’ second ground for summary judgment based on the general
rule of noninterference in voluntary associations, the trial court abused its
discretion in so doing.  See Stevens, 231 S.W.3d at 76 (holding that
standard of review for trial court’s application of general rule of
noninterference is abuse of discretion).

2.  Sufficiency of Notice

Turning to the substance of appellants’ second ground
for summary judgment, we first note that the Association acknowledged in its
responses to appellants’ requests for admissions that “notice of the [nominating
committee] meeting was required to be sent to the actual members,” but denied
that notice was required to be sent to committee alternates.[10]  The issue before
us then is not whether notice was necessary, but whether proper notice occurred
in this case.[11] 
The Association contends, and appellants do not dispute, that the committee
chairman, Rod Craig, sent notice by email less than two days before the meeting
to all committee members.  Although Goodrich acknowledged receipt of the
notice, and four of seven committee members (including the chairman) apparently
attended the meeting, the Association points to no evidence establishing that
the other members not in attendance, or the two alternates, received actual
notice of the meeting.  The key dispute then is whether emailed notice of the
meeting was sufficient notice under the bylaws or applicable Texas law.

In their motion, appellants pointed to two sections
of the bylaws as potentially governing notice of nominating committee meetings.[12]  The first occurs
in Article III of the bylaws, titled:  “Board of Directors: Number, Powers,
Meetings.”  Section 5 under this article discusses the nomination of directors
by the nominating committee as well as the formation of the committee itself by
the board.  Section 11 under Article III authorizes “[s]pecial meetings” of the
board, with notice given by (1) personal delivery, (2) written notice by first
class mail, (3) telephone communication or facsimile, or (4) telegram. 
Although the inclusion of the nominating committee rules in the Article dealing
with the board of directors suggests that the committee could be considered a
committee “of the board,” it is unclear whether the rules governing
specially-called board meetings were intended to apply to the committee.  If
such notice rules were applicable to the committee, then emailed notice was
clearly not sufficient as it was not included in the exclusive list of methods
for notice.

The other section upon which appellants relied, and
the one on which they primarily focused, is contained in Article VI and reads
in pertinent part as follows:

Article VI

Miscellaneous

            . . . .

            Section 5.  Notices.  Unless otherwise
provided in these By-Laws, all notices, demands, bills, statements, or other
communications made or given under these By-Laws shall be in writing and shall
be deemed to have been duly given if delivered personally or if sent by U.S.
mail, first class postage prepaid, or by facsimile:

            (a)  Member Notice.  If to a Member, at
the address which the Member has designated in writing and filed with the
Secretary, or if no such address has been designated, at the address of the
Tract or Residential Unit of such Owner . . . .

Appellants contended that if
the board of directors meeting notice provisions did not apply to notice of
nominating committee meetings then this “catch-all” provision applied.

The Association argues first that Article VI, Section
5 does not govern nominating committee notice because it provides only methods
for notice or other communications if such notice is otherwise specifically
required by another section of the bylaws.  We do not read the section so
narrowly.  The section states that it covers notices or other communications
“made or given under these ByLaws” unless rules for such notice or
communication are “otherwise provided”; it does not negate the possibility that
there may be notices and communications that are not explicitly spelled out but
nonetheless are required for proper operation of the Association under the
bylaws.  Indeed, the section seems designed as a “catch-all” provision that
should be referenced any time notice or other communication needs to be made in
governance of the Association and for which specific rules are not already set
forth.  As such, the section would cover notice for nominating committee
meetings in the event that such meetings are not covered by the provisions for
specially-called meetings of the board in Article III, Section 11.

Second, the Association argues that although the
description of notice methods in the section specifies that notice must be “in
writing,” it does not specifically exclude email as a proper method for
transmitting written notice.  Again, we disagree.  The section indicates that
notice “shall be deemed to have been duly given if delivered personally or if
sent by U.S. mail . . . or by facsimile.”  The section then details the address
to be used for delivery.  The specificity of the section with regard to how and
where notice is delivered indicates that it was intended to be exclusive of
other methods.  Therefore, if Article VI, Section 5 governed notice of the
nominating committee meeting, then email was not an acceptable method for such
notice.

Although there is some uncertainty in the bylaws as
to whether notice of the nominating committee was governed by the rules applicable
to specially-called board meetings contained in Article III, Section 11 or the
catch-all notice provision in Article VI, Section 5, under either section,
email is not an acceptable form of notice.  Because the evidence established
that the only notice provided of the committee meeting was by email, notice was
not properly provided.

3.  Is Summary Judgment Warranted?

On appeal, appellants contend that the holding of a
meeting in the absence of proper notice under the bylaws invalidated any action
taken at that meeting.  See Chen, 2004 WL 35989, at *5 (affirming trial
court’s finding that alleged directors of incorporated religious group had not
been lawfully elected at meeting called without written notice); Been v.
Producers Ass’n of San Antonio, Inc., 352 S.W.2d 292, 293 (Tex. Civ. App.—San
Antonio 1961, no writ) (affirming temporary injunction reversing removal of
directors at improperly noticed meeting where directors had not waived their
rights under the bylaws); 7 C.J.S. Associations § 18 (2004) (“Failure to give
proper notice will render the proceedings at a meeting invalid.”).  However, we
decline to grant summary judgment on this ground at this time for two reasons. 
First, as the appellants recognized in their motion, the relevance of whether
the committee meeting was properly noticed turns on whether the committee in
question was the appropriate committee for considering candidates for the
December 2007 election.  Since, as explained above, a fact issue exists as to
this antecedent question, it would be premature to decide the dependent issue
of notice.  Second, even if summary judgment could be granted on this ground,
appellants failed to establish as a matter of law that the proper remedy was
the relief that they requested in their motion.  Accordingly, we overrule appellants’
first issue.[13]

V.  Attorney’s Fees

In their fourth issue, appellants contend that the
trial court erred in awarding attorney’s fees to the Association because
appellants’ arguments were well-founded and, indeed, “completely meritorious.” 
The award of attorney’s fees was clearly premised on the grant of summary
judgment favoring the Association.  Because we reverse the trial court’s grant
of summary judgment, the award of attorney’s fees is without a supporting basis. 
See, e.g., Allen v. Allen, 280 S.W.3d 366, 383-84 (Tex. App.—Amarillo
2008, pet. denied).  Consequently, we also reverse the award of attorney’s fees
to the Association.  Appellants’ fourth issue is sustained.

We reverse the trial court’s judgment in its entirety
and remand for further proceedings in accordance with this opinion.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

Panel consists of Chief
Justice Hedges, Justice Anderson, and Senior Justice Mirabal.[14]

 









[1] This background section
is offered only as a brief overview of the facts and not an exhaustive
recitation of the voluminous and often conflicting factual allegations in this
case.





[2]
The Association
additionally argued in its brief that any actions of the 2007 nominating
committee allegedly taken in violation of the bylaws were merely voidable and
not void, and as such, the Association ratified those actions by defending
against appellants’ lawsuit.  Ratification is an affirmative defense on the
merits.  See Swank v. Cunningham, 258 S.W.3d 647, 670 n.7 (Tex.
App.—Eastland 2008, pet. denied).  Success or failure on this defense does not
affect subject matter jurisdiction on appellants’ claims.





[3] In its briefing, the
Association suggests that in considering the motions for summary judgment, the
trial court adopted the general disposition of courts to not interfere in the
internal management of voluntary associations that we described in Stevens
v. Anatolian Shepherd Dog Club of America, Inc., 231 S.W.3d 71, 74-75 (Tex.
App.—Houston [14th Dist.] pet. denied).  Based on this general rule, the
Association asserts that the proper standard for our review of the grant of
summary judgment in this case is abuse of discretion.  In Stevens, we
employed an abuse of discretion standard in assessing whether the trial court
properly declined to intervene in the inner workings of a voluntary
association; however, the appeal in Stevens was from a final trial on
the merits, not a grant of summary judgment.  Id. at 76.  As explained
in the text above, the proper standard of review in an appeal from a summary
judgment is de novo.  See Valence Operating Co., 164 S.W.3d at 661.  The
existence of this general rule of noninterference does not relieve the
Association of its summary judgment burden to demonstrate entitlement to
judgment as a matter of law.  See id.  Moreover, in the trial court, the
Association raised this general rule only in response to appellants’ seeking summary
judgment based on the allegedly improper notice for the nominating committee
meeting.  Consequently, we will limit its consideration to that issue on
appeal.





[4] A document purporting to
be recommendations from an “Organizational Task Force” for the Association was
also attached to the motion.  Likewise, a copy of a document entitled “Board of
Directors Meeting Minutes,” dated April 28, 1994, was also included.  This
latter document indicates that the board approved the recommendations of the
task force on the listed date.





[5] Favre appeared to not
remember the formation of the task force, and he stated that he “assumed” that
the reason for the recommendation was because the committee could function
adequately when formed only “during annual election time.”





[6] An amendment was recorded
in 2008 during the pendency of this litigation.





[7] Because our conclusion
that the Association failed to prove that the bylaws were amended in 1994 does
not rest on the Association’s failure to initially record the alleged amendment
with the county clerk’s office, we need not consider the Association’s
contention on appeal that it properly recorded the alleged amendment in 2008.





[8] The statement that
amendment did not affect anyone’s substantive rights appears to have related to
the Association’s argument that the bylaws permitted the Declarant to
unilaterally amend them “so long as no substantive rights of any existing owner
[were] adversely affected.”  However, as discussed in a prior section of this
opinion, the Association failed to conclusively demonstrate that the Declarant
did in fact amend the bylaws in regard to appointment of the nominating
committee.  Thus, at least this portion of the Association’s basis for relief
argument is without foundation.





[9] It is important to note
that the Association’s motion for summary judgment was a traditional motion,
seeking judgment as a matter of law because the Association’s evidence
disproved at least one element in each of appellants’ causes of action; it was
not a no-evidence motion.  Compare Tex. R. Civ. P. 166a(c) with
Tex. R. Civ. P. 166a(i); see also Grimes v. Reynolds, 252 S.W.3d 554,
558 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (distinguishing between
traditional and no-evidence motions for summary judgment).





[10] Appellants interpret one
of the Association’s appellate arguments as suggesting that no notice was
necessary.  The argument in question, however, appears to assert only that the
requirements for notice contained in a particular section of the bylaws did not
apply, not that no notice at all was required.





[11] Appellants attached a
copy of a document entitled “First Colony Community Association Policy
Governance,” which purported to set forth certain procedures for the nominating
committee, including that it was required to “convene in September to review
the submitted applications to determine which candidates shall be placed on the
ballot.”  Thus, a meeting of the nominating committee appears to have been a
requirement, and the Association does not contend otherwise.





[12] Appellants additionally
argued that under the Texas laws governing operation of the Association, email
was not an acceptable form of notice.  Because of our resolution of the issue
under the bylaws, we need not consider the statutory argument.





[13] In their motion for
summary judgment, appellants additionally argued that the ballot used in the
December 2007 election was defective on its face and therefore invalid. 
Appellants appear to have abandoned this ground on appeal.





[14] Senior Justice Margaret
Garner Mirabal sitting by assignment.