Rhea C. STEVENS, Appellant

v.

The ANATOLIAN SHEPHERD DOG CLUB OF AMERICA, INC., Appellee.

No. 14–06–00367–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 5, 2007.

Rehearing Overruled July 12, 2007.

Peter Linzer, Sealy, for appellant.

David B. Hurst, Houston, Sidney Levine, Sealy, for appellee.

Panel consists of Chief Justice HEDGES and Justices FOWLER and EDELMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant Rhea C. Stevens is an enthusiast and breeder of a relatively rare breed of dog known as the Anatolian Shepherd. Stevens's interest in the breed led her to apply for membership in the Anatolian Shepherd Dog Club of America, Inc. (ASDCA). The ASDCA never recognized Stevens as a member, despite retaining her membership fee of thirty dollars. Stevens sued for specific performance, exemplary damages, and attorney's fees due to what she perceived to be a breach of contract by the ASDCA. The trial court, after a bench trial, entered a take-nothing judgment against Stevens, except the trial court ordered her thirty-dollar membership fee be returned. Stevens now raises five issues on appeal. She claims that the trial court erred in the following: 1) not recognizing a binding contract for membership between her and the ASDCA; 2) holding that the laws of contract did not apply in this case to the ASDCA; 3) failing

to find her irreparably harmed and entitled to specific performance; 4) denying her motion for new trial after alleged misconduct by the judge; and 5) failing to award her attorney's fees. We affirm the trial court's judgment because the trial court had the discretion to refrain from exercising jurisdiction over Stevens's suit to grant her membership. In addition, we hold the trial court did not err in denying the motion for a mistrial, or in refusing to award attorney's fees to Stevens.

### Factual and Procedural Background

When Stevens applied for membership, she submitted the ASDCA's form. The form requests basic information about the applicant, including name, address, phone number, dog-related activities in which the applicant is interested, name and identification number of any registered Anatolian Shepherds owned, special skills or abilities that would be useful to the club, other dog or animal clubs the applicant has joined. The application then asks the applicant to select whether they are applying for an "individual membership," a "family membership," or an "associate membership." Next to each type of membership is a brief description of the eligibility requirements for the type of membership. Next to the words "family membership," which Stevens chose, was a description of the class which stated in relevant part, "open to any owner of an A.S.D.C.A. registered Anatolian Shepherd." Below the part of the application where the applicant selected which of the three member classes they wished to apply for, the application in bold type stated, "I have read the A.S.D.C.A. By-laws. I/We agree to abide by the By-laws as adopted by the ANATOLIAN SHEPHERD DOG CLUB OF AMERICA." Below this statement were two spaces for signatures of applicants. Stevens's signature appears in the first blank. Immediately below these signature lines

appears another line of text which says, "ENDORSED BY TWO MEMBERS IN GOOD STANDING," followed by two more signature lines, which were left blank by Stevens.

Stevens was uncertain if the signatures of two members in good standing were necessary for all levels of applicant. She discussed this question with several club members and with Gary Jakobi, then, and currently, the acting president of the ASDCA. Testimony differs as to what Jakobi said to Stevens regarding the signatures. According to Stevens, Jakobi told her that she did not need to worry about having anyone sign her application. However, Jakobi testified that he told Stevens to get to know the ASDCA members, and he was confident someone would be willing to sign her application. Stevens also testified that several unspecified club officers told her that the member signatures were unnecessary because missing signatures were often supplied by club officers themselves when time came to vote on an application.

Stevens testified that she was further confused by the fact that the first application form given to her did not have lines for sponsoring member signatures. She lost this application, and asked for and received a new application containing signature lines for current members. Stevens herself testified that the bylaws in effect at all times, whether the 1993 bylaws or the later 1999 bylaws, required sponsor endorsements, despite the absence of signature lines in the first application form.

In August of 2000, Stevens finally sent in an application without any sponsoring signatures. Enclosed with the application was a check for thirty dollars and a typed letter containing Stevens's legal letterhead, the body of which read as follows:

I have read you[r] application very closely, and I hereby accept your offer of membership as offered to any owner of an ASDCA registered dog.

There are no members in my area to endorse my application, but none are required under the language of the application since I do currently own an ASDCA registered dog, the name and number of which appear on the application as requested.

I look forward to receiving my membership information, notices, and mailings.

The ASDCA cashed the check in August. Stevens testified that she spoke with Marilyn Harned and two other officers who assured her that her application was "fine" and that she was a member. Stevens also received two editions of the club newsletter, which is published three times annually.

But, as time passed, Stevens received no further newsletters, and wondering what was amiss, she contacted several members of the ASDCA who told her that she was in fact not a member. She received a letter from Jakobi in the summer of 2001, apparently in response to a letter from Stevens, which explained that all applicants to the ASDCA must be treated the same, and that properly submitted applications received from July of 2000 on would be voted on at the next scheduled meeting of the ASDCA Board of Directors, which was to be held in November of 2001. The letter also described an appeals process an applicant can initiate if regular membership is not granted. Stevens's name was listed in the ASDCA newsletter as an applicant to be voted on, but Stevens never heard anything more from the club regarding a vote or its result.

On November 5, 2001, Stevens filed suit in this case. The case was tried before the court and judgment rendered that Stevens take nothing except a refund of her thirty-dollar application fee—relief not requested by her. Findings of fact and conclusions of law were made at Stevens's request. The court concluded that the right of the ASDCA to conduct its own affairs should prevail over contract law. The court further concluded that the ASDCA did not act unreasonably and that Stevens did not suffer the type of economic hardship that might result in a court's interference with the affairs of a membership organization.

## Analysis

### I. Trial Court Did Not Err in Refusing to Exercise Jurisdiction

Stevens's first three issues—the trial court's failure to recognize a contract, its holding that contract law does not apply, and its failure to award her specific performance—are all related and will be considered together.

### A. Texas Courts Generally Do Not Exercise Jurisdiction Over Affairs of Voluntary Non-profit Associations

 The trial court's determination that contract law does not apply here is really an expression of the policy that Texas courts do not generally exercise jurisdiction over the affairs of voluntary non-profit associations. Courts are not disposed to interfere with the internal management of a voluntary association. *Bhd. of R.R. Trainmen v. Price*, 108 S.W.2d 239, 241 (Tex.Civ.App.-Galveston 1937, writ dism'd). A member, by becoming such, subjects himself to his organization's power to administer, as well as its power to make, its rules. *Id.* So long as the governing bodies do not substitute legislation for interpretation, do not transgress the bounds of reason, common sense, fairness, do not contravene public policy, or the laws of the land in such interpretation

and administration, the courts cannot interfere. *Id.*

This rule extends to decisions regarding admission of members into an association. The Supreme Court has said, "[a] voluntary association has the power to enact rules governing the admission of members and prescribing certain qualifications for membership; and such rules will be enforced, unless they are against good morals or violate the laws of the State." *Cline v. Ins. Exch. of Houston,* 140 Tex. 175, 166 S.W.2d 677, 680 (1942).

■ Despite this general rule, courts will interfere in the inner-dealings of a private association if a valuable right or property interest is at stake. *See Hatley v. Am. Quarter Horse Ass'n,* 552 F.2d 646, 655 (5th Cir.1977) (citing *Masonic Grand Chapter of Order of Eastern Star v. Sweatt,* 329 S.W.2d 334, 337 (Tex.Civ.App.-Fort Worth 1959, writ ref'd n.r.e.)); *Owens Entm't Club v. Owens Cmty. Improvement Club,* 466 S.W.2d 70, 72 (Tex.App.-Eastland 1971, no writ). Courts have also held that associations must accord their members something similar to due process, and have intervened in the inner-dealings of associations on this ground as well. *See Hatley,* 552 F.2d at 655; *see also Sweatt,* 329 S.W.2d at 337; *Price,* 108 S.W.2d at 241.

**B. Standard of Review**

■ Courts of appeals have considered whether a trial court correctly decided to intervene or not to intervene in the affairs of a private non-profit association. However, rarely have the courts discussed the relevant standard of review. We have found only two cases in which the courts considered the standard of review. *See Tex. Thoroughbred Breeders Ass'n v. Donnan,* 202 S.W.3d 213, 223–24 (Tex.App.-Tyler 2006, pet denied); *Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter,* 172 S.W.3d 274, 278 (Tex.App.-El Paso 2005, no pet.). Both cases applied a de novo review because they concluded that the doctrine of judicial non-interference was a jurisdictional rule implicating subject matter jurisdiction. *See Donnan,* 202 S.W.3d at 223–24; *Juarez,* 172 S.W.3d at 277–78.

Other cases have not expressly stated the standard of review they applied. *See, e.g., Hatley v. Am. Quarter Horse Ass'n,* 552 F.2d 646 (5th Cir.1977); *Cline v. Ins. Exch. of Houston,* 140 Tex. 175, 166 S.W.2d 677 (1942); *St. Louis & S.W. Ry. Co. of Tex. v. Thompson,* 102 Tex. 89, 113 S.W. 144 (1908); *Dallas County Med. Soc'y v. Ubinas–Brache,* 68 S.W.3d 31 (Tex.App.-Dallas 2001, pet. denied); *Owens Entm't Club v. Owens Cmty. Improvement Club,* 466 S.W.2d 70 (Tex.Civ.App.-Eastland 1971, no writ); *Schooler v. Tarrant County Med. Soc'y,* 457 S.W.2d 644 (Tex.Civ.App.-Fort Worth 1970, no writ); *Masonic Grand Chapter of Order of Eastern Star v. Sweatt,* 329 S.W.2d 334 (Tex. Civ.App.-Fort Worth 1959, writ ref'd n.r.e.); *Gold Knob Outdoor Adver. Co. v. Outdoor Adver. Ass'n of Tex.,* 225 S.W.2d 645 (Tex.Civ.App.-Texarkana 1949, no writ); *Evans v. Southside Place Park Ass'n, Inc.,* 154 S.W.2d 914 (Tex.Civ.App.-Galveston 1941, writ ref'd w.o.m.); *Bhd. of R.R. Trainmen v. Price,* 108 S.W.2d 239 (Tex.Civ.App.-Galveston 1937, writ dism'd).

We do not agree that a de novo standard of review applies because we do not interpret the doctrine of judicial non-interference to be a jurisdictional rule. Courts have not declined to assert jurisdiction over disputes involving non-profit associations because they lack subject matter jurisdiction; rather they have declined to exercise jurisdiction more for various policy reasons such as judicial economy. *See* Zechariah Chafee, Jr., *The Internal Affairs of Associations Not For Profit,* 43

HARV. L. REV. 993, 1021–29 (1930) (discussing policies that affect courts' decisions whether to exercise jurisdiction over association related disputes). Typically, the allegations raised in these suits—breach of contract, negligence, intentional torts—fall within a court's subject matter jurisdiction. *See, e.g., Donnan,* 202 S.W.3d at 223 (claims included negligence, libel, and slander); *Juarez,* 172 S.W.3d at 279 (breach of contract claim amongst others); *Dallas County Med. Soc'y,* 68 S.W.3d at 41 (breach of contract). The courts choose not to assert jurisdiction for the policy reasons mentioned above.

On occasion, courts have made exceptions to the general rule of non-intervention and chosen to hear a dispute when a property right or other valuable right is at issue. *See Hatley,* 552 F.2d at 655; *Owens,* 466 S.W.2d at 72. Thus, in some instances, the policy of autonomy gives way to a policy of intervention if the harm being done to the plaintiff is great enough. Whether the right is valuable enough to warrant protection is within the trial court's discretion. For example, one court has held that a club member's right to be a part of the determination of what the club does with a building it owns is a great enough interest to justify interference. *See Owens,* 466 S.W.2d at 72. Conversely, another court has held that suspension of one year from an organization that assigns sporting officials to referee high school athletics was not a sufficiently compelling property right to justify judicial intervention. *See Juarez,* 172 S.W.3d at 279. There is no bright line test. Courts must weigh the importance of the property or civil right at issue and determine whether it is great enough to justify deviation from the traditional rule of allowing associations the greatest possible autonomy.[1]

Since the determination to be made by the courts is one involving the weighing of factors, and the exercise of discretion, we believe an abuse of discretion standard is appropriate. As a result, our review will consider whether the trial court abused its discretion. This standard is especially appropriate when the trial court must weigh competing policy considerations and balance interests in determining whether to grant relief, *In re Doe,* 19 S.W.3d 249, 253 (Tex.2000), and it is typically applied to procedural or other trial management issues. *Id.* (citing cases stating that abuse of discretion is appropriate when reviewing attorney disqualification, admission of evidence, and imposition of discovery sanctions).

## C. No Abuse of Discretion in Declining to Exercise Jurisdiction

■ Here, Stevens has contended that she has been denied a pecuniary benefit, sufficient to elevate her claim to justiciability. Specifically, she complains of her exclusion from the ASDCA's breeder list, her exclusion from club advertising, and the denial of an opportunity to vote on the breed standard. These alleged pecuniary benefits are the property rights the court was to weigh against the general policy of non-intervention, to see whether it would be proper to exercise jurisdiction.

But Stevens provided no evidence of the pecuniary detriment caused by the denial of these benefits. She did not show how much she receives for one of her Anatolian puppies now, nor did she show how much she would have charged had she been on

---

1. As mentioned above, Texas courts have also required something similar to due process on the part of voluntary associations, and will, at times, intervene on that basis as well. *Hatley,* 552 F.2d at 655; *see Sweatt,* 329 S.W.2d at 337; *Price,* 108 S.W.2d at 241. In such an instance, courts similarly weigh the degree of deprivation of process against the policy in favor of association autonomy.

the breeder referral list. She only testified to the price of Anatolian Shepherd puppies generally, not to any difference in the price asked if the breeder was or was not on the approved breeder list. Stevens also did not attempt to show how much monetary damage was done by excluding her from club advertising. And she has not, and almost surely could not, show damage from not being able to vote on the breed standard. Given the dearth of evidence regarding any pecuniary loss, we cannot find that the trial court abused its discretion in holding that the policy of association autonomy outweighed the property interest involved in this case.

Because we find that the trial court did not abuse its discretion in declining to exercise its jurisdiction, we overrule appellant's first, second, and third issues.

## II. No Error In Denying Motion for New Trial

■ In her fourth issue, Stevens argues that it was error for the court to deny her motion for new trial. According to Stevens's brief, the trial judge took a ten-minute break during which she socialized with two defense witnesses, played with a puppy brought by one of the witnesses, and asked that same witness for assistance in purchasing a puppy. Stevens claims that the trial court should have granted a new trial based on this impropriety.

■ We review a trial court's denial of a motion for new trial for abuse of discretion. *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex.1994). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly

fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005). Here, none of the judge's alleged behavior appears in the appellate record. Therefore, we cannot conclude that the trial judge abused his discretion when he denied the motion for a new trial. Stevens's fourth issue is overruled.

## III. No Error In Failing to Award Attorney's Fees

■ Stevens argues in her fifth issue that she is entitled to attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code, either because she should prevail on her contract claim, or because the court awarded her the refund of her thirty-dollar membership fee. Having already decided that the trial court did not err in refusing to consider her contract issue, we are left with the issue of whether the refund of Stevens's membership fee entitles her to attorney's fees under 38.001.[2]

■ Generally an award or denial of attorney's fees is reviewed under an abuse of discretion standard. *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex.2004). The controlling law in this instance, section 38.001 of the Texas Civil Practice and Remedies Code, provides for the recovery of attorney's fees in addition to the amount of a "valid claim" and costs, if the claim is a contract claim, among others. *See* TEX. CIV. PRAC. REM.CODE § 38.001. A party must satisfy two requirements to obtain an award of attorney's fees: (1) a party must prevail on a cause of action for which attorney's fees are recoverable; (2) the party must recover damages. *Bohatch v. Butler & Binion*, 905 S.W.2d 597, 608 (Tex.App.-Houston [14th

---

**2.** Because neither party complains that the trial court erred in ordering a refund of the $30, we need not consider whether the trial court abused its discretion in ordering a refund.

Dist.] 1995), *aff'd*, 977 S.W.2d 543 (Tex. 1998).

The claim in this case was for a breach of contract, in satisfaction of which Stevens sought specific performance, declaring her a member of the ASDCA, and exemplary damages. The trial court properly decided that it would not consider the contract claim. Therefore, it cannot be held that she prevailed on her cause of action. The thirty dollars awarded to her was relief she had not requested, and it appears to have been aimed at avoiding unjust enrichment, a separate basis of civil liability, wholly independent of tort or contract. JAMES M. FISCHER, UNDERSTANDING REMEDIES § 50 (Matthew Bender & Co.1999); *see also* Douglas Laycock, *The Scope and Significance of Restitution*, 67 TEX. L. REV.

1277, 1277 (1989). Therefore, the award of thirty dollars was not related to her breach of contract claim, and does not trigger the award of attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. We overrule appellant's fifth issue.

## Conclusion

Having overruled all of appellant's issues, we affirm the judgment of the trial court.