**Affirmed and Opinion filed March 30, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00824-CV

## STEPHEN WELLS, Appellant

### V.

## KATHERINE WELLS, Appellee

**On Appeal from the Probate Court**
**Galveston County, Texas**
**Trial Court Cause No. PR-0069477-A**

## O P I N I O N

As part of the settlement of a prior dispute with his sister Katherine, Stephen Wells[1] attested that he had no non-exempt assets that could be used to wholly or partially satisfy a judgment against him, and he agreed that if his attestation included false information or omitted material information, an agreed judgment for $1 million could be rendered against him. The trial court later concluded that these conditions

---

[1] Because they share the same surname, we refer to the parties by their given names.

were satisfied because Stephen owned a share of a corporation that granted him membership in, and access to, a family campground. We agree with the trial court that the share in the corporation is a non-exempt asset that could be used to satisfy a judgment, in whole or in part. We accordingly affirm the trial court's judgment.

## I. BACKGROUND

Mildred Wells owned an undivided 1/12 interest in a tract of West Virginia real estate known as Grey Rocks Camp ("the Camp"). All of the property's owners were related and held the property as a partnership until 1986, when they all conveyed their undivided interests in the surface estate to Grey Rocks, Inc. ("Grey Rocks"). In exchange for the conveyance, Mildred and the other grantors each received a membership "share" in Grey Rocks, which allowed them access to the Camp.

### A. The Share Transfer and Stephen's Pre-Settlement Misrepresentations

In 2003, Mildred transferred her membership share to her son Stephen, and the company's other shareholders voted to approve the transfer.[2]

On Mildred's death in 2007, Stephen and his sister Katherine served as co-executors of Mildred's estate. During this time, Stephen misrepresented to Katherine that his share in Grey Rocks was part of Mildred's estate.

### B. Katherine's Claims Against Stephen

Katherine eventually sued Stephen for an accounting of the estate, asserting claims of breach of fiduciary duty, fraud, conversion, and statutory claims under the Texas Estates Code. Katherine's claims were resolved by (a) a settlement agreement

---

[2] Although the corporation's president attested that there are no "shares" in the corporation, the corporation's bylaws expressly refer to its "shares," and the trial court found that Stephen owned a share of the corporation. In accordance with the standard of review, we defer to the trial court's resolution of the conflicting evidence.

2

that included Stephen's execution of an affidavit attesting that he "do[es] not own any non-exempt personal property (as defined by Chapter 42 of the Texas Property Code) that may be used to satisfy a judgment in whole or in part," and (b) the parties' execution of an agreed final judgment holding Stephen liable to Katherine for $1 million. The parties stipulated that the agreed judgment would be held by Katherine's attorneys, and that if Katherine discovered information leading to a reasonable belief that Stephen had provided false information or omitted material information in his "Affidavit of No Non-Exempt Assets," her counsel would notify Stephen, who would have seven days to respond. If Katherine's attorneys determined, in their sole discretion, that Stephen had failed to provide a reasonable explanation, then the agreed final judgment would be filed with the trial court and set for a hearing. Stephen agreed that if the trial court found that he had provided false information or omitted material information in his affidavit, then he waived any defense to the entry of the agreed final judgment.

## C.    Discovery of the Share's Ownership

In 2018, Katherine learned of Mildred's *inter vivos* transfer to Stephen of her share of Grey Rocks. Katherine notified Stephen that she considered his settlement affidavit to contain false information or material omissions. Stephen responded that Grey Rocks owned the real estate, and his interest in Grey Rocks gave him only a membership right to use the Camp. Dissatisfied with this explanation, Katherine filed the agreed final judgment and set it for a hearing.

The trial court found that Stephen's membership share in Grey Rocks is a non-exempt asset that may be used to satisfy a judgment in whole or in part. The trial court accordingly concluded that Stephen's affidavit contained false information and omitted material information, and thus, Katherine was entitled to rendition of the Agreed Final Judgment. The trial court's findings of fact and conclusions of law

included findings both about false statements in, or material omissions from, Stephen's settlement affidavit, and Stephen's pre-settlement misrepresentations that the share was part of Mildred's estate.

On appeal, Stephen argues that the judgment must be reversed because (1) any pre-settlement misrepresentations are irrelevant under the terms of the Settlement Agreement; and (2) the evidence is legally and factually insufficient to support the judgment, because under the Texas common-law "judicial non-intervention doctrine," a membership interest may not be used to satisfy a judgment.

## II. WAIVER

As a threshold issue, Katherine contends that Stephen waived his right to appeal, because he consented to rendition of the Agreed Final Judgment upon a finding by the trial court that he provided false information in, or omitted material information from, the affidavit he signed as part of the settlement. Katherine maintains that Stephen cannot now attack the judgment on appeal because Stephen's counsel signed the Agreed Final Judgment below the statement, "AGREED TO FORM, APPROVED AND ENTRY REQUESTED," and Stephen does not complain on appeal that (a) his counsel lacked authority to sign on his behalf; (b) the judgment was the result of fraud, collusion, or misrepresentation; or (c) the trial court lacked jurisdiction to render judgment. *See, e.g.*, *Reule v. Sherwood Valley I Council of Co-Owners, Inc.*, No. 01-17-00593-CV, 2019 WL 4196898, at *2 (Tex. App.—Houston [1st Dist.] Sept. 5, 2019, no pet.) (mem. op.) (per curiam) ("To preserve error for appeal, a party who signs a judgment must specify that his agreement with the judgment is *as to form*, but not as to substance and outcome."); *Mailhot v. Mailhot*, 124 S.W.3d 775, 777 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("It is well-settled that a judgment entered on the agreement of the parties cures all non-jurisdictional defects."); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558,

4

562 (Tex. App.—Dallas 1989, no writ) ("[A] party will not be allowed to complain on appeal of an action or ruling which he invited or induced."); *Charalambous v. Jean Lafitte Corp.*, 652 S.W.2d 521, 525 (Tex. App.—El Paso 1983, writ ref'd n.r.e.) ("[A] party may not attack a judgment to which he has agreed absent allegation and proof of fraud, collusion or misrepresentation.").

We do not agree that Stephen has waived his right to appeal. Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). To determine if a party has waived a right, we "examine the acts, words, or conduct of the parties, and it must be 'unequivocally manifested' that it is the intent of the party to no longer assert the right." *Rodriguez v. Villarreal*, 314 S.W.3d 636, 645 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting *Dep't of Protective & Regulatory Servs. v. Schutz*, 101 S.W.3d 512, 516 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

In discerning the parties' intentions, it must be remembered that an agreed judgment is construed in the same manner as a contract. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). And multiple documents may comprise a single contract. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). Thus, "to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984).

Here, the Settlement Agreement, Stephen's "Affidavit of No Non-Exempt Assets," and the Agreed Final Judgment are, as a matter of law, part of a single contract. The Agreed Final Judgment specifically incorporates the Settlement

Agreement, and the Settlement Agreement attached, and expressly required Stephen to execute, both the affidavit and the Agreed Final Judgment. Moreover, the Agreed Final Judgment states that it is rendered "in order to give full effect to the [Settlement] Agreement, to enforce the terms set forth in therein [sic]." Thus, the terms of the Settlement Agreement are part of the Agreed Final Judgment. And, despite the boilerplate "entry requested" language in the Agreed Final Judgment, the parties specified that entry of the judgment would not be requested or granted unless a condition precedent occurred—such as Stephen's inclusion of false information in, or omission of material information from, his "Affidavit of No Non-Exempt Assets." Given Stephen's position that the trial court erred in concluding that such a condition precedent has occurred, he cannot be said to have approved or requested entry of the judgment.

Although the Settlement Agreement also addresses the subject of waiver, it contains a more limited waiver than Katherine suggests. Specifically, the agreement provides that Stephen "waives any *defense* to the entry of the Agreed Final Judgment in the event the Court determines that Stephen Wells has provided false information or omitted material information in his Affidavit of No Non-Exempt Assets."[3] But, Stephen does not appeal the judgment on the ground that he proved a defense to Katherine's complaints; rather, he maintains that Katherine failed to satisfy her *own* burden to prove that Stephen provided false information in, or omitted material information from, his affidavit.[4] Had the parties instead intended that Stephen waive

---

[3] Emphasis added. The parties similarly agreed that Stephen waived "any defense" to rendition of the Agreed Final Judgment in the event Stephen failed to timely cure a breach of the Settlement Agreement.

[4] As discussed in the next section, Stephen's argument relies on the judicial non-intervention doctrine, under which, for policy reasons, a trial court has the discretion to decline jurisdiction over the internal management of voluntary associations. *See Stevens v. Anatolian Shepherd Dog Club of Am., Inc.*, 231 S.W.3d 71, 75 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Katherine assumes that the applicability of the doctrine is a defense, but neither party has

all bases of appeal, they could have included such language in their agreement. *See, e.g., Estate of Crawford*, No. 14-17-00703-CV, 2017 WL 5196309, at *2 (Tex. App.—Houston [14th Dist.] Nov. 9, 2017, pet. denied) (mem. op.) (per curiam) (dismissing appeal from a judgment that the appellant expressly agreed not to appeal). They did not do so, and this appeal does not appear to fall within the scope of the more limited waiver to which they agreed.

We accordingly consider the merits of Stephen's appeal.

### III. SUFFICIENCY OF THE EVIDENCE STEPHEN OWNED AN ASSET THAT MAY BE USED TO SATISFY A JUDGMENT

In our consideration of the merits, we begin with Stephen's second and third issues, which are dispositive of this appeal. In these issues, Stephen asserts that the evidence is legally and factually insufficient to support the trial court's finding that Stephen's share in Grey Rocks is a non-exempt asset that may be used to satisfy a judgment in whole or in part. Stephen argues that his share cannot be reached due to the judicial non-intervention doctrine, under which "Texas courts do not generally exercise jurisdiction over the affairs of voluntary non-profit associations." *Stevens v. Anatolian Shepherd Dog Club of Am., Inc.*, 231 S.W.3d 71, 74 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Stephen maintains that his share in Grey Rocks cannot be used to satisfy a judgment against him because the Camp is a voluntary association[5] and using his share in satisfaction of a judgment would be contrary to the judicial non-intervention doctrine inasmuch as doing so would divest him of his membership in the Camp.

---

briefed the issue. Because it makes no difference to the outcome of the appeal, we will assume, without deciding, that it is not a defense.

[5] The trial court found that Grey Rocks is a for-profit corporation, and although Stephen does not explicitly challenge that finding, no evidence supports it. The finding therefore is not binding on this Court. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Saulsberry v. Ross*, 485 S.W.3d 35, 41 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

## A.    Standard of Review

We review the trial court's decision whether to apply the judicial non-intervention doctrine for abuse of discretion. *Stevens*, 231 S.W.3d at 76. A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

While we review the trial court's conclusions of law de novo,[6] we review the trial court's factual findings under the same standards applicable to a jury's verdict. *Green v. Alford*, 274 S.W.3d 5, 23 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (op. on en banc reh'g) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)). When a finding is challenged for legal sufficiency, we review the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id*. When reviewing for factual sufficiency, we consider all of the record evidence, and we will overturn a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772.

Under any standard of review, the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 255 n.50 (Tex. 2020). Thus, less evidence is needed to affirm

---

[6] *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020).

than to reverse a judgment. *Yeng v. Zou*, 407 S.W.3d 485, 489 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## B.     The Judicial Non-Intervention Doctrine

The judicial non-intervention doctrine, sometimes called the doctrine of judicial non-interference,[7] was succinctly explained in *Brotherhood of Railroad Trainmen v. Price* as follows:

> Courts are not disposed to interfere with the internal management of a voluntary association. The right of such an organization to interpret its own organic agreements, its laws and regulations, after they are made and adopted, is not inferior to its right to make and adopt them. And a member, by becoming such, subjects himself, within legal limits, to his organization's power to administer, as well as to its power to make, its rules.

*Bhd. of R.R. Trainmen v. Price*, 108 S.W.2d 239, 241 (Tex. App.—Galveston 1937, writ dism'd). In light of this doctrine, courts commonly decline to exercise jurisdiction over internal disputes within voluntary associations. *Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter*, 172 S.W.3d 274, 278–79 (Tex. App.—El Paso 2005, no pet.).[8] And because the doctrine applies to controversies concerning an association's internal management, the overwhelming majority of cases discussing the doctrine are suits against the association (or its officers or directors) challenging the association's enactment or application of its own internal rules.[9]

---

[7] *See Haedge v. Cent. Tex. Cattlemen's Ass'n*, No. 07-15-00368-CV, 2016 WL 5929596, at *4 (Tex. App.—Amarillo Oct. 11, 2016, pet. denied) (mem. op.).

[8] There are exceptions. Courts have intervened "if a valuable right or property interest is at stake" or if members are not accorded "something similar to due process." *Stevens*, 231 S.W.3d at 75. *See also Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 176 (Tex. App.—Dallas 2000, pet. denied) ("Judicial review is only proper when the actions of the organization are illegal, against some public policy, arbitrary, or capricious.").

[9] *See, e.g.*, *Cline v. Ins. Exch. of Hous.*, 140 Tex. 175, 177, 166 S.W.2d 677, 677 (1942) (non-member alleged that association's rule defining eligibility for membership violated anti-trust

9

Stephen, however, bases his evidentiary-sufficiency claims solely on a case that is an outlier. *Cluck v. Cluck* involved no claims against an association and no challenges to an association's enactment or implementation of its rules; rather, *Cluck* is a divorce case in which the trial court awarded the husband's membership in a country club to his wife. *See Cluck v. Cluck*, 647 S.W.2d 338, 341–42 (Tex. App.—San Antonio 1982, writ dism'd). The Fourth Court of Appeals reversed, and based on the judicial non-intervention doctrine, held that the trial court erred "in divesting the appellant of his membership in the country club." *Id.* at 342. In reaching this conclusion, however, our sister court pointed out that membership in the country club was evidenced by shares of stock in the non-profit corporation, and the corporation's bylaws provided that "[t]he stock is nonnegotiable and nontransferable except on the books of the club, and only after the club has been afforded an opportunity to exercise its option to purchase the same for $1,000.00 per share." *Id.* at 341. In other words, the club had the right, but not the obligation, to repurchase the share, and no obligation at all to accept Mrs. Cluck as a member in Mr. Cluck's

statutes); *Screwmen's Benevolent Ass'n v. Benson*, 76 Tex. 552, 13 S.W. 379, 379 (1890) (orig. proceeding) (member sued association, alleging unlawful expulsion); *Haedge*, No. 07-15-00368-CV, 2016 WL 5929596, at *2–3 (members sued cattlemen's association for canceling their shares and attendant grazing rights); *Whitmire v. Nat'l Cutting Horse Ass'n*, No. 2-08-176-CV, 2009 WL 2196126, at *1–3 (Tex. App.—Fort Worth July 23, 2009, pet. denied) (mem. op.) (member sued equestrian club for the suspension and later termination of her membership); *Rodriguez v. Montagno*, No. 05-07-00204-CV, 2008 WL 142638, at *1 (Tex. App.—Dallas Jan. 16, 2008, no pet.) (mem. op.) (member sued racing-pigeon association for his expulsion); *Stevens*, 231 S.W.3d at 74–75 (applicant sued dog-breed club for failure to grant her membership); *Juarez*, 172 S.W.3d at 278–79 (member of sporting-officials' association sued association for his suspension); *Dickey*, 12 S.W.3d at 174 (married members sued country club because club's bylaws did not allow them to play golf together on Saturday mornings); *Burge v. Am. Quarter Horse Ass'n*, 782 S.W.2d 353, 354 (Tex. App.—Amarillo 1990, no writ) (horse owner sued quarter horse association for canceling the horse's registration); *Harden v. Colonial Country Club*, 634 S.W.2d 56, 58 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) (member sued country club because bylaws restricted the transfer of his membership); *Lawrence v. Ridgewood Country Club*, 635 S.W.2d 665, 666 (Tex. App.—Waco 1982, writ ref'd n.r.e.) (member sued challenging his suspension from country club).

place. Thus, the trial court's transfer of the membership violated the country club's bylaws.

The facts in this case are very different. Here, the trial court was required to determine only whether the share of Grey Rocks was "non-exempt personal property (as defined by Chapter 42 of the Texas Property Code) that may be used to satisfy a judgment in whole or in part." It is undisputed that the share is not exempt personal property as defined by Chapter 42;[10] thus, the only question is whether the share can be used to satisfy a judgment.

Here, execution[11] on the share would not violate Grey Rocks' bylaws, which provide as follows:

> An owner-member may dispose of his and/or her share in one of three ways:
>
> (1)   Share at death will be purchased by the remaining owner-membership at the price set forth in the camp partnership deed.
>
> (2)   *Share may be surrendered at any time to the remaining owner-membership at the price set forth in the camp partnership deed.*[12]
>
> (3)   Sell or transfer to another individual subject to approval of three quarters (75%) of the remaining ownership.

Unlike the association in *Cluck*, Grey Rocks is obligated to pay for the share upon its surrender. A trial court therefore could properly order turnover and sale of

---

[10] *See* TEX. PROP. CODE §§ 42.001–.002.

[11] "Execution" includes any process necessary to enforce the relief awarded to a party in a judgment, including a sale. *English v. English*, 44 S.W.3d 102, 105 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Ex parte Boniface*, 646 S.W.2d 333, 334 (Tex. App.—Austin 1983, orig. proceeding).

[12] Emphasis added.

Stephen's share of Grey Rocks back to the corporation[13] in accordance with the corporation's bylaws.

Because execution on Stephen's share of Grey Rocks would not require a court to "interfere with the [corporation's] internal management," we conclude that the trial court did not abuse its discretion in declining to apply the judicial non-intervention doctrine. We overrule Stephen's second and third issues.

## IV. IMMATERIAL FINDINGS AND EVIDENCE

In his remaining issue, Stephen asserts that, in rendering the Agreed Final Judgment, the trial court erroneously considered and relied upon representations Stephen made before the parties entered into the Settlement Agreement. Specifically, the trial court found that Stephen claimed reimbursement from his mother's estate for the annual dues he paid to Grey Rocks in the years 2007–2011. The trial court further found that Katherine was then unaware that the share in Grey Rocks was not part of her mother's estate, so she credited the dues as a legitimate payment made by Stephen on the estate's behalf. Stephen argues that his alleged misrepresentations are irrelevant because Katherine expressly stated in the Settlement Agreement that she disclaimed any reliance on any promise, condition, inducement, or other consideration not expressly stated in the Settlement Agreement. Moreover, she specifically waived any claim that Stephen fraudulently induced her agreement.

Although we agree that the terms of the Settlement Agreement render any prior misrepresentations by Stephen irrelevant, the trial court's findings regarding those misrepresentations are immaterial. A finding is immaterial when, among other things, it has been rendered immaterial by other findings. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 506 (Tex. 2018) (referring to jury findings). The

---

[13] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b).

challenged findings about Stephen's pre-settlement misrepresentations were rendered immaterial by the trial court's findings that (a) Stephen swore in his affidavit that he did "not own any non-exempt personal property (as defined by Chapter 42 of the Texas Property Code) that may be used to satisfy a judgment in whole or in part," (b) Stephen's share ownership predates the Settlement Agreement, and (c) the share is a non-exempt asset that may be used to satisfy a judgment in whole or in part. In accordance with these findings, the trial court concluded that Stephen "provided false information and omitted material information in his affidavit of no non-exempt assets[,] and that entitled [Katherine] to the entry of the Agreed Final Judgment under the terms of the Agreement."

Because the findings regarding Stephen's pre-settlement misrepresentations are immaterial, as is the evidence on which those findings were based, those findings and evidentiary rulings are harmless and are not grounds for reversal. *See Andrews v. Key*, 13 S.W. 640, 641 (Tex. 1890) (admission of immaterial evidence in a nonjury trial is not grounds for reversal); *Z.M. Shayjayadam3, LLC v. Omnova Sols., Inc.*, No. 14-19-00623-CV, 2020 WL 6278615, at *8 (Tex. App.—Houston [14th Dist.] Oct. 27, 2020, no pet.) (mem. op.) (trial court's immaterial fact findings are harmless). We overrule Stephen's first issue.

## V. CONCLUSION

Having overruled each of the issues presented, we affirm the trial court's judgment.

/s/    Tracy Christopher
       Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

13