

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00415-CV

———————————————

GREGORY WILLIAMS, Appellant

V.

PATRICK SMITH, Appellee

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-324180-21

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Gregory Williams[1] sued Appellee Patrick Smith after Smith, in his official role in the Omega Psi Phi fraternity, suspended Williams's district and international fraternity memberships for two years. Smith moved for a traditional summary judgment, arguing that res judicata barred Williams's claims because they had been addressed in a 2019 lawsuit and that Williams's claims were also barred by the doctrine of judicial non-intervention. The trial court granted Smith's motion. In one point with multiple subpoints, Williams argues that the trial court erred because res judicata did not bar his lawsuit, because the doctrine of judicial non-intervention should not apply, and because he raised genuine issues of material fact regarding his claims against Smith.[2]

Williams is correct that res judicata does not bar the lawsuit—the 2019 lawsuit was dismissed for want of jurisdiction. *See Williams v. Smith*, No. 05-19-01251-CV, 2020 WL 7332674, at *4 (Tex. App.—Dallas Dec. 14, 2020, pet. denied) (mem. op.)

---

[1]Williams is an attorney, representing himself pro se.

[2]Williams also complains that the trial court erred by failing to file findings of fact and conclusions of law, *see* Tex. R. Civ. P. 296–297, but findings and conclusions are not appropriate when an evidentiary hearing is not held. *See Palladian Bldg. Co. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 n.7 (Tex. App.—Fort Worth 2005, no pet.). Because a summary judgment may not be granted if a genuine issue of material fact is presented, the trial court's granting of summary judgment does not depend on its role as a factfinder, unlike the trial court's role in a bench trial, a default judgment on unliquidated-damages claims, a sanctions judgment, or any other judgment based in any part on an evidentiary hearing. *See Phillips v. McNeill*, 635 S.W.3d 620, 625 (Tex. 2021).

(dismissing the cause for want of jurisdiction); *Cox v. Chevrolet*, No. 01-17-00973-CV, 2019 WL 2588101, at *4 (Tex. App.—Houston [1st Dist.] June 25, 2019, no pet.) (mem. op.) (stating that an order that dismisses a lawsuit for want of jurisdiction is not res judicata of the merits because when a court determines that it lacks jurisdiction over an action, it is incapable of reaching a disposition on the merits of the underlying claims).  However, because the temporary loss of membership rights, standing alone, is generally not the type of property loss for which courts will interfere in a voluntary organization's operations, *see Williams*, 2020 WL 7332674, at *3, and because Williams received due process to the extent that he had a sufficiently valuable property right in his memberships, we affirm the trial court's judgment without reaching his remaining arguments.  *See* Tex. R. App. P. 47.1.

## II. Background

In the first lawsuit, filed in Collin County, Williams complained of procedural due-process violations, breach of fiduciary duty, breach of contract, defamation, and participatory liability (civil conspiracy).  The trial court granted a temporary restraining order in Williams's favor, but—after an evidentiary hearing—it denied Williams's request for a temporary injunction that would bar his suspension, and Williams appealed the injunction's denial to our sister court, which recited the case's background as follows:

> Williams has been an active member of Omega Psi Phi fraternity (the "Fraternity") for more than thirty years and owns both local and international life memberships in the organization. He sued the

3

Fraternity and Patrick Smith—the Fraternity's Ninth District Representative—after his memberships were suspended for two years following a Fraternity disciplinary procedure; Williams alleged that appellees deprived him of property without due process. . . .

. . . .

- On March 24, 2019, Dr. David Marion, Grand Basileus of the Fraternity, wrote a letter to the Fraternity's District Representatives, declaring a moratorium on certain social events within the organization. Marion stated that in the event members violated the moratorium, "Sanctions will be issued up to expulsion and chapter revocation." In a subsequent phone call, Marion clarified his directive: there were to be no "probate shows" or "presentation shows" for an indefinite period of time.[]

. . . .

- On April 2, Smith informed Williams in writing that he may have violated the Fraternity's code of conduct and that he was being placed on interim suspension pending investigation of the presentation show [his chapter] held on March 31.[]

. . . .

- On August 2, Williams was notified by the Ninth District Counselor, Quinon A. Brooker, that the District Council was formally charging him with

    failing to adhere to District Representative, Brother Patrick Smith's direct orders to cease and desist with the execution of a Mu Gamma Chapter Neophyte Presentation show on March 31, 2019 during an international moratorium on social events levied by Grand Basileus Dr. David Marion against the peace and tranquility of the Ninth District.

*Williams*, 2020 WL 7332674, at *1. A telephonic hearing was held by a panel made up

of the Ninth District Council, including Smith, Brooker, and the region's vice

4

president.  *Id.* at *2.  Williams participated in the hearing, which lasted "a couple of hours."  *Id.*  The panel deliberated the next day and made a punishment recommendation.  *Id.*

The Dallas court held that the doctrine of judicial non-intervention had deprived the trial court of subject matter jurisdiction.  *Id.* at *3.  Accordingly, it set aside the order denying Williams's request for temporary injunction and dismissed the cause.  *Id.* at *4.  The supreme court denied Williams's petition for review on March 19, 2021.

Undeterred, Williams sued Smith and the Fraternity (which he later nonsuited) in Tarrant County.  In this suit, Williams raised some of the same claims—procedural due-process violations, defamation, and participatory liability (civil conspiracy)—and added claims for fraud and intentional infliction of emotional distress.  Smith filed a traditional motion for summary judgment,[3] arguing, among other things, that Williams's claims were barred by the doctrine of judicial non-intervention because his Fraternity memberships were not a protected property right and because he had been afforded due process.

---

[3]We review a summary judgment de novo.  *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

## III. Discussion

Traditionally, courts are not disposed to interfere with a voluntary association's internal management. *Collins v. Kappa Sigma Fraternity*, No. 02-14-00294-CV, 2017 WL 218286, at *8 (Tex. App.—Fort Worth Jan. 19, 2017, pet. denied) (mem. op.). By becoming a member, a person subjects himself, within legal limits, to the organization's power to make and administer its rules, including rules regarding membership in the organization. *Id.* However, a court will interfere in a private association's inner dealings if a valuable right or property interest is at stake or if the association fails to give its members something similar to due process. *Id.*

Because the doctrine of judicial non-intervention applies to controversies concerning an association's internal management, the overwhelming majority of cases discussing it involve suits against the association (or its officers or directors) to challenge the association's enactment or application of its own internal rules. *Wells v. Wells*, 621 S.W.3d 362, 369 (Tex. App.—Houston [14th Dist.] 2021, no pet.);[4] *see*

---

[4]The association will usually prevail because (1) the member fails to exhaust the association's available remedies, *see Screwmen's Benevolent Ass'n v. Benson*, 13 S.W. 379, 380 (Tex. 1890) (orig. proceeding); *Gordon v. S. Tex. Youth Soccer Ass'n*, 623 S.W.3d 25, 32–33 (Tex. App.—Austin 2021, pet. denied); *Juarez v. Tex. Ass'n of Sporting Offs. El Paso Chapter*, 172 S.W.3d 274, 280 (Tex. App.—El Paso 2005, no pet.), (2) the member receives due process in the deprivation of a valuable property right, *see Haedge v. Cent. Tex. Cattlemen's Ass'n*, No. 07-15-00368-CV, 2016 WL 5929596, at *2–3, *6 (Tex. App.—Amarillo Oct. 11, 2016, pet. denied) (mem. op.) (grazing rights); *Rodriguez v. Montagno*, No. 05-07-00204-CV, 2008 WL 142638, at *1–2 (Tex. App.—Dallas Jan. 16, 2008, no pet.) (mem. op.) (upholding expulsion when the record established no violation of the association's constitution or bylaws), or (3) the record reflects no arbitrariness, fraud, or collusion in the deprivation of a valuable property

*Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 177 (Tex. App.—Dallas 2000, pet. denied) (holding that membership in a golf club is not a valuable property right, particularly when plaintiffs did not allege gender inequity or discrimination and there was no claim of fraud or illegality, and that "[i]f the courts were to intervene each time members of a golf club felt that restrictions on tee times were unreasonable, operation of such clubs would become unmanageable and valuable judicial resources would be wasted").

Cases that attract judicial review are those that allege a *wholesale* deprivation of due process in violation of some civil or property right. *The Episcopal Church v. Salazar*, 547 S.W.3d 353, 411 (Tex. App.—Fort Worth 2018), *rev'd in part on other grounds sub nom. Episcopal Diocese of Fort Worth v. Episcopal Church*, 602 S.W.3d 417 (Tex. 2020); *see Masonic Order of E. Star v. Sweatt*, 329 S.W.2d 334, 337 (Tex. App.—Fort Worth 1959, writ ref'd n.r.e.) (noting that "essential elements" of "due process" are "notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case"). Expulsion—rather than suspension—from an association, for example, tends to attract more judicial involvement. *See Sweatt*, 329 S.W.2d at 337; *see also Int'l Printing Pressmen v. Smith*, 198 S.W.2d 729, 732, 738 (Tex. 1946) (reversing expulsion from union for failing to follow its expulsion rules); *Collins*, 2017 WL 218286, at *8–10. On the other hand, a refusal to accept a membership renewal does not require notice, a hearing, or court involvement. *Guadalupe Valley Elec. Co-op., Inc. v.*

right, *see Burge v. Am. Quarter Horse Ass'n*, 782 S.W.2d 353, 356 (Tex. App.—Amarillo 1990, no writ) (horse registration).

*S. Tex. Chamber of Com.*, 374 S.W.2d 329, 333 (Tex. App.—San Antonio 1963, no writ). And complaints about the procedural due process actually provided by an association "are exactly the type of complaints in which Texas courts have declined to intervene." *Whitmire v. Nat'l Cutting Horse Ass'n*, No. 2-08-176-CV, 2009 WL 2196126, at *4–5 (Tex. App.—Fort Worth July 23, 2009, pet. denied) (mem. op.) (declining to interfere despite appellant's complaint that the association violated its own rules in investigating and punishing her).

Whether a right is valuable enough to warrant protection is within the trial court's discretion. *Stevens v. Anatolian Shepherd Dog Club of Am., Inc.*, 231 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). For example, a one-year suspension from an organization that assigns sporting officials to referee high school athletics has been held an insufficiently compelling property right to justify judicial intervention. *Id.* And we held in *Harden v. Colonial Country Club* that a membership certificate in a voluntary nonprofit corporation "does not afford appellant such a 'valuable property right'" that a court would be compelled to intervene and that the involvement of a property right alone does not necessarily authorize judicial intervention in the absence of arbitrariness, fraud, or collusion. 634 S.W.2d 56, 59 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); *see Lawrence v. Ridgewood Country Club*, 635 S.W.2d 665, 666–67 (Tex. App.—Waco 1982, writ ref'd n.r.e.) (affirming summary judgment on appellant's suspension of membership in a social club because the club violated none of its rules in suspending him).

8

Williams refers us to *Collins* to support his argument that he had a valuable property right in his memberships and was deprived of due process when he was suspended.[5] In *Collins*, the appellant was expelled from his fraternity and argued that the trial court had erred by granting summary judgment on his promissory-estoppel, wrongful-expulsion, breach-of-fiduciary-duty, breach-of-contract, defamation, and civil-conspiracy claims, contending that the fraternity had failed to provide him with due process. 2017 WL 218286, at *1, *6–7. Although the fraternity presented evidence that it had followed its bylaws when it provided him with the requisite notice and allowed him to provide his own defense, we held that the judicial non-intervention doctrine did not apply because genuine fact issues existed regarding

---

[5]Williams also directs us to *Anambra State Community In Houston, Inc. v. Ulasi*, 412 S.W.3d 786 (Tex. App.—Houston [14th Dist.] 2013, no pet.), *Stevens*, and *Sweatt*, but these cases are inapposite. *Ulasi* involved competing associations with similar names. 412 S.W.3d at 788, 792–93. *Stevens* involved a dog breeder who sued for specific performance after an association cashed her $30 membership-fee check but never acknowledged her as a member. 231 S.W.3d at 72, 74. *Sweatt* involved an expulsion characterized by a lack of due process that would have cost the member's beneficiaries $600 in insurance benefits at her death. 329 S.W.2d at 335–37. The *Sweatt* court distinguished mere loss of membership, stating,

> If appellee's punishment had been limited to the deprivation of the fellowship to which membership entitled her, a different question would be presented. Deprivation of pecuniary benefits resulting from contractual relations is a different proposition, and is governed by different principles of law. The former may not involve due process, but the latter does.

*Id.* at 337.

9

whether the appellant had the opportunity to be heard before a fair and impartial tribunal. *Id.* at \*8–10.

We reached that conclusion because the appellant had provided evidence in his summary judgment response that, among other things, the members on the committee that heard and expelled him had longstanding grievances against him, that three of the committee's four members who voted to expel him had been on the opposite side of him in numerous lawsuits over the years, that other fraternity members had not been expelled for conduct similar to his, and that the committee purposely held its expulsion trial when he could not attend. *Id.* at \*9.

To his summary judgment motion, Smith attached portions of Williams's February 26, 2020 deposition in the earlier lawsuit, in which Williams

- agreed that nothing in the Fraternity's constitution, policies, procedures, or code of conduct required Smith to recuse himself from the hearing and that—to the contrary—they provided that the district representative or his designee would preside over the hearing;[6]

- agreed that he had the opportunity to introduce evidence and present oral argument at the hearing and was not prohibited from or limited to testifying about anything he deemed relevant;

- agreed that he did not object to Smith's testifying during the hearing and that nothing in the Fraternity's governing documents prevented Smith from both testifying as a witness and making the disciplinary decision after the hearing; and

---

[6]Harold Bailey, the First Vice District Representative, presided over the August 9, 2019 pretrial conference and the August 12, 2019 hearing. Williams agreed in his deposition that he had not objected to Bailey's presiding.

- agreed that his Fraternity membership did not entitle him to any real property rights or to any financial benefits or compensation other than reimbursement when in an officer position.

Smith also attached the March 24, 2019 moratorium letter in which members were warned that sanctions in violation of the moratorium could be issued "up to expulsion and chapter revocation"; the March 27, 2019 email he sent as district representative about the moratorium; Williams's April 2, 2019 letter of interim suspension regarding the March 31, 2019 event; Williams's August 2, 2019 formal charges and notice of hearing; Williams's August 28, 2019 notice of judgment and sentence; and the Fraternity's member code of conduct in effect in 2019. The notice of judgment and sentence stated that "[a]fter consideration of the district council's recommendation, the District Representative has issued a sentence of *2 Years Suspension from the Fraternity and a Public Reprimand from the District Representative*" with the sentence initiated August 25, 2019, and set to expire on August 25, 2021.

Although Williams alleged in his amended petition that there had been "bad blood" and a continuing feud with Smith since 2018 and that some of the council members at the hearing were Smith's "political subordinates" and Smith's "compensated political appointees," other than his affidavit and that of three other members claiming that Smith was known to hold personal grudges,[7] Williams attached

---

[7]James Durham and Keio Gamble, members of Williams's chapter, stated, among other things, that (1) Smith "is known to have a reputation of holding personal

11

no summary judgment evidence to his response about the council members who had heard the disciplinary matter on August 19, 2019, and who had recommended a one-year suspension. His deposition excerpts and the July 8, 2019 formal complaint that he had filed with the Fraternity's international headquarters against Smith for "abuse of power" established his own grudge against Smith but not Smith's alleged grudge against him.

Here, in contrast to *Collins*, Williams was suspended rather than expelled, and—assuming for the sake of argument that his membership in a purely social club might constitute a valuable property right warranting judicial intervention—he does not dispute that he received plenty of notice and actively participated in the hearing. Although he alleged in his amended petition that Smith had fraudulently represented that the member code of conduct would govern the matter, he put forth no summary

grudges and vendettas against certain members of the [F]raternity" and (2) they had "personally witnessed [Smith] unfairly treat members" of Williams's chapter and Williams. William Parker, a member of the Rho Beta chapter, repeated Durham's and Gamble's first statement before attesting that Smith had unfairly excluded exculpatory evidence in Parker's hearing, resulting in his expulsion, and that the Grand Tribunal in Atlanta reviewed all of the evidence, including the excluded evidence, and vacated the expulsion (Parker instead received a one-year suspension and a $1,000 fine). Williams repeated Durham's and Gamble's first and second statements in his own affidavit. Other than Smith's refusing to acknowledge Williams's standing at a microphone for over fifteen minutes during a question-and-answer session at the 2018 Fraternity Conclave in New Orleans, however, none of the affiants listed any other specific instances of unfair treatment of Williams by Smith. Williams testified in his deposition that after the New Orleans Conclave, Smith had called him "[a]nd I listened to what he said, and, of course, he was apologetic, blah, blah, blah." Williams said, "And I just told him, I said, you know, I've got problems with your leadership. I've got problems with -- you can't undo what you just did." Williams testified that his candor had resulted in the subsequent lack of cordiality between them.

judgment evidence that Smith had failed to follow the code.  Because, unlike in *Collins*, the record reflects that Williams received the process he was due, the trial court did not err by granting Smith's motion, and we overrule the portion of Williams's sole point.

## IV.  Conclusion

Having overruled the dispositive portion of Williams's sole point, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  December 22, 2022